No. 32,623

L. W. BALDWIN and GUY A. THOMPSON, Trustees of The Missouri Pacific Railroad Company, *Appellees*, v. THE STATE CORPORATION COMMISSION, THE SOUTHERN KANSAS STAGE LINES COMPANY, et al., *Appellants.*

(56 P. 2d 453)

Opinion filed April 11, 1936.

*Charles W. Steiger, Floyd F. Shields,* both of Topeka, and *John W. Blood,* of Wichita, for the appellants.

*W. P. Waggener, J. M. Challiss, O. P. May* and *B. P. Waggener,* all of Atchison, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This action involves the right of a railroad company to conduct motor-carrier operations in this state through a contract carrier without holding itself out as a public motor carrier, but under circumstances which in effect constitute a public motor-carrier business, in competition with other public carriers, without first obtaining from the corporation commission of this state a certificate of convenience and necessity.

The occasion for this controversy and the pertinent facts concerning it may be ascertained from a portion of the order of the state corporation commission. It reads:

"By the commission: This proceeding arises on a citation issued by the state corporation commission upon the complaint of the Southern Kansas Stage Lines Company, alleging that the Missouri Pacific Railroad Company is engaged in transporting goods in intrastate commerce between Arkansas City, Kan., and El Dorado, Kan., by truck over the highways without a permit. The commission on its own motion included in said citation against said Missouri Pacific Company operations by truck on highways between Atchison, Kan., and Topeka, Kan., also between Salina and Concordia and between other points in Kansas, and required said railroad company on due notice to appear and give evidence of its operations by motor vehicle, if any, and show cause why it should not cease said operations if operating illegally, or comply with the motor-carrier laws of the state of Kansas.

"The matter was heard by the commission on June 11, 1934. The complainant, the Southern Kansas Stage Lines, appeared; the respondent, the Missouri Pacific Railroad Company, appeared and offered evidence of its operations by motor vehicle; and the Atchison, Topeka and Santa Fe Railway Company, the Union Pacific Railroad Company, and the Chicago, Rock Island and Pacific Railway Company appeared by counsel as friends of the commission. After hearing the testimony the case was taken under advisement.

"The pertinent facts as shown by the evidence are as follows: The respondent, the Missouri Pacific Railroad Company, is a corporation duly organized and incorporated under and by virtue of the laws of the state of Missouri for the 'purpose of purchasing lines or railroad . . . and property appertaining thereto . . . and of maintaining and operating said lines of railroad, and of constructing, maintaining and operating a railroad for public use in the conveyance of persons and property . . .' in Missouri and Kansas and other states. While the record in this case does not so disclose, the commission will take notice of the fact that said railroad company is duly authorized to do and does a common-carrier business by rail in the state of Kansas.

"On May 13, 1933, a contract-carrier permit was issued by the commission to Henry Blake, doing business as Blake Transport Company (permit No. 21-87). This permit was issued prior to the effective date of the law requiring the commission to hear applications for contract-carrier permits.

"On March 1, 1934, the Missouri Pacific Railroad Company entered into a contract with H. W. Blake whereby the said Blake agreed to load into his truck 'any and all freight, baggage, mail and express tendered to contractor (Blake) by Pacific Trustees' (Missouri Pacific Railroad), and transport the same to said company's depot and unload from said trucks at the stations designated by the agent of said railroad. Said Blake agreed to furnish forces and equipment for the proper handling and movement of said freight, baggage, mail and express, and make such number of trips each day as might be agreed upon, on such schedules as the railroad company 'shall, from time to time, deem necessary to promptly and efficiently handle said business required to be moved; stopping en route on each trip at the depots specified by said company, for the purpose of picking up and/or delivering any such freight, baggage, mail and express' which said company desired moved.

"Said Blake further agreed to hold said railroad company harmless in any operation of the trucks, from injury or damage caused by said transportation over the highways, and further agreed to comply with all applicable municipal, state and federal laws with respect to the operation of trucks, together with payment of all taxes, fees and charges, and furnish bond or insurance required by said laws incident to such operation. Said company agreed, so far as possible, to furnish to said Blake transportation for himself and employees, to be used on the railroad, so far as the same was necessary to perform properly the work covered in said contract.

"For the services rendered by the said Blake said company agreed to pay monthly, not later than the twentieth day of each calendar month, in full for the services rendered by said Blake during the preceding month, 'such rate or rates per mile for each trip made by each of contractor's (Blake's) trucks hereunder, and for such mileage per trip as provided in attached exhibit or addenda.' Attached to said contract in an addenda is set forth nine separate routes over which said Blake shall transport property under this contract, said routes ranging in length from fifty miles to three hundred seventy-three miles, for which said company agreed to pay Blake on each of said operations the sum of 15 cents or 15.5 cents per mile. These routes include the one on which the citation was issued. This contract and addenda was submitted in

evidence and was the first time that it had been before the commission for consideration.

"The Blake Transport Company hauls for no one but the Missouri Pacific Railroad Company and does no pick-up or delivery service for the Missouri Pacific Railroad Company or anyone else. All shipments handled by the Blake Transport Company move under the legal rates and tariffs published by the Missouri Pacific Railroad Company under regular waybills or bills of lading made out by the Missouri Pacific agents at their regular railroad stations. The property moved by the Blake Transport Company by motor vehicle is of three types: First, that which moves from one station to another station of the Missouri Pacific on the same line; second, that which moves from one station on the Missouri Pacific to another station on another line of the Missouri Pacific; and third, that which moves from a station of the Missouri Pacific Railroad Company to a connecting carrier such as the Chicago, Rock Island and Pacific Railway or the Union Pacific Railroad Company. All of the transactions of the shipper are with the Missouri Pacific Railroad Company, and all of the transactions of the Blake Transport Company are with the Missouri Pacfic Railroad Company. The shipper in most instances does not know that his freight is being moved en route by motor truck.

"On a separate citation Henry Blake was cited to appear on the same date as the respondent herein. Upon request of his attorney, who is also attorney for the Missouri Pacific Railroad Company, and upon his statement that all of the points could be raised in this case, the commission continued the citation against Blake."

The commission made the following findings and order:

"The commission, therefore, finds that the railroad company and Henry Blake, doing business as Blake Transport Company, are engaged in the transportation of property by motor vehicle on the highways as a common carrier without having proved public convenience and necessity, and further finds that the present operations by said parties on the highway are not authorized by law or the rules and regulations of this commission, and that said parties should desist from further operations on the highways under said contract.

"The operation under the contract with Blake does not comply with the rules and regulations of the commission in a further respect. The commission after formal hearing duly promulgated minimum rates for contract carriers below which said contract carriers cannot legally charge. These minimum rates are based on classification, weight and distance. Under the rate fixed in the contract between the Missouri Pacific and Blake there is no way of ascertaining whether or not this rate is being violated, inasmuch as the rate between the Missouri Pacific and Blake is based on mileage alone, which has no relation, so far as the record shows, to tonnage moved.

"The commission, therefore, finds that under the operations by motor vehicle by the Missouri Pacific Railroad Company and the Blake Transport Company it is impossible to ascertain whether or not there is compliance with the minimum-rate order pertaining to contract carriers heretofore promulgated in Docket No. 14484.

"For all these reasons the commission finds that the Missouri Pacific Rail-

road Company should cease and desist from offering and delivering its freight to Henry Blake, doing business as the Blake Transport Company, holder of contract-carrier permit No. 21-87, and should refrain from transporting said property by motor vehicle for hire under contract-carrier permit.

"It is therefore by the commission ordered that said Missouri Pacific Railroad Company cease and desist from offering and delivering freight to Henry Blake, holder of a contract-carrier permit, doing business as Blake Transport Company, and that the Missouri Pacific Railroad Company, before engaging in operations by motor vehicle either directly or indirectly, comply with the motor-carrier laws of the state of Kansas and the rules and regulations of this commission pertaining to the transportation of motor vehicles upon the highways of the state of Kansas."

Respondent railroad company filed its application with the commission for a rehearing, which was denied. It filed its application in the district court of Atchison county for a review of the proceedings before the commission. The trial court made findings of fact, conclusions of law and set aside the order and decision of the commission on the ground it was unlawful and unreasonable, and that respondent in the movement of its freight, through a contract carrier duly authorized under the laws of this state, was acting within its corporate rights as granted to it by R. S. 1933 Supp. 66-501a and R. S. 1933 Supp. 66-501b. From those findings, conclusions of law and order, the commission and The Southern Kansas Stage Lines Company have appealed.

Respondent is authorized to transact business in this state as a common carrier by rail. A portion of one of its lines runs from El Dorado to Arkansas City. That service, however, is not by direct but by a circuitous route intended to serve the trade territory through which it passes. There is a direct line of railroad operating between El Dorado and Arkansas City, and there has also been granted to complainant, a common motor carrier, a certificate of convenience and necessity to operate directly between these points. Complainant and the commission contend, if respondent desires to transact a common motor-carrier business directly between these points, it is required to obtain from the commission a certificate of convenience and necessity. (R. S. 1933 Supp. 66-1,114; R. S. 1933 Supp. 66-501a; R. S. 1933 Supp. 66-501b.) They insist the motor-carrier act gives the commission authority to determine whether additional transportation facilities are required. They contend this is not only true now as to *common motor carriers,* but likewise applies to the issuance of *contract-carrier permits;* that a hearing must now be had on application for a contract-carrier permit and

all operating common carriers and those who have applied for a certificate to operate as common carriers in the territory proposed to be served, must all be notified and be given an opportunity to be heard on such application. (R. S. 1933 Supp. 66-1,112b.) The pertinent portion of that statute provides:

"The commission is hereby vested with power and authority to grant or deny the permit prayed for, or to grant it for the partial exercise only of the privilege sought, and may attach to the exercise of the privilege granted by such permit such terms and conditions *as in its judgment will carry out the purposes of this act.*" (Italics inserted.)

It clearly appears one of the main purposes of the act is to protect common carriers by rail and common carriers by motor vehicle alike in territory where there exists sufficient common-carrier service to adequately meet the public needs. To permit respondent in its service as a common carrier by rail to add a short-cut motor service over a direct line already served by rail and motor carriers, without obtaining a certificate to do so, would of course defeat the obvious intent and purpose of the act. The evidence plainly discloses the service of the contract carrier, Blake, is a part of the common-carrier service conducted by respondent. The shipper and Blake alike deal exclusively with the railroad. So far as the consignor ordinarily knows his shipment is delivered to consignee entirely by rail. Under the terms of the contract between respondent and Blake, respondent, not Blake, determines the movement of freight, baggage, mail and express according to its own schedules, routings, stops, etc. It fixes his schedules and routings in the same manner as it fixes schedules, routings and stops for its trains. That is, Blake complies strictly with its directions and mandates. Respondent completely controls and maintains sole supervision of Blake's trucking business. In other words, it has made the truck operation a component part of its common-carrier business.

In the very similar case of *N. Y. C. Rd. Co. v. P. U. C.*, 121 Ohio St., 588, 170 N. E. 574, it was said:

"So far as the contract or contracts between The A. B. Peek Company and the respondent are concerned they speak for themselves. By these contracts the railroad company has secured to itself the exclusive use of these motor-propelled vehicles in its common-carrier business. While it does not own the trucks and trailers it does completely control their operation. It directs the property to be conveyed by them; it determines the times when and the routes over which the trucks shall travel; it retains complete supervision of their operation; the property transported is at all times under the control of the respondent; the transportation is a consummation of the contracts

between the respondent and the shippers; the property is handled through the use of bills of lading and waybills exactly as any other freight which moves upon the respondent's road. In short, the respondent has made this truck operation a part of its common-carrier business." (p. 592.)

In the instant case respondent in effect is operating a common motor-carrier business on the highways of the state without a permit. To be sure it receives the shippers' goods as a "public carrier by rail," but it conducts that common-carrier business by truck or by rail as its convenience dictates.

That respondent is an authorized public carrier by rail is admitted. It contends it has authority to engage in the transportation business by highway without obtaining a certificate of convenience and necessity from the commission. Our attention is directed to R. S. 1933 Supp. 66-501a and 66-501b. Those sections provide:

"Every railroad corporation now or hereafter organized under the laws of this state shall, in addition to the powers now conferred by the statutes of this state, have power to engage in transportation of persons, property, and mail by highway transport, air transport, and water transport, and every railroad corporation organized under the laws of any other state or territory and now or hereafter lawfully engaged in the operation of a railroad in this state shall have like powers in this state: *Provided:* That the exercise in this state of any powers hereby granted in all things shall be subject to all lawful requirements of the statutes of this state now or hereafter enacted with reference to certificates of convenience and necessity, permits, and public regulation in the same manner as like business conducted by private individuals or by corporations other than railroad corporations: *And provided further,* That any railroad corporation organized under the laws of this state shall exercise in any other state any power hereby granted only in conformity with and to the extent permitted by the laws of such other state." (R. S. 1933 Supp. 66-501a.)

"Any such railroad corporation may exercise in one or more of the following methods any power hereby granted: (a) by itself operating equipment owned, leased, and otherwise held or controlled by it; (b) through operations conducted by a corporation owned or controlled in whole or in part by such railroad corporation through stock ownership or otherwise, with equipment owned, leased, and otherwise held or controlled by either or both of such corporations; (c) by operations conducted under contract therefor by a corporation independently owned or controlled, or by any individual or association of individuals, in either case with equipment owned, leased, and otherwise held or controlled by. either or both of the parties to such contract." (R. S. 1933 Supp. 66-501b.)

Blake had obtained a permit as a contract carrier on May 13, 1933, under the old law, R. S. 1933 Supp. 66-1,115, before the new

law became effective which required a hearing on the application for a contract-carrier permit. (R. S. 1933 Supp. 66-1,112b.) Respondent claims it was authorized to contract with Blake and operate as it is doing. But the pertinent portions of R. S. 1933 Supp. 66-1,114 provide:

"It shall be unlawful for any public motor carrier to operate as a carrier of intrastate commerce within this state without first having obtained from the public service commission a certificate of convenience and necessity. . . . If the commission finds from the evidence that the proposed service or any part thereof will promote the public convenience and necessity, the commission shall issue the certificate; otherwise such certificate shall be denied. Before granting a certificate to a public motor carrier, the commission shall take into consideration other existing transportation facilities in the territory for which a certificate is sought, and in case it appears from the evidence that the service furnished by existing transportation facilities is reasonably adequate, the commission shall not grant such certificate."

These various statutes must be construed together. Respondent had no authority under its charter as a carrier by rail to use the state highways. Provisions of R. S. 1933 Supp. 66-501a and 66-501b, are in the nature of enabling acts. They supply the railroads with the desired authority to engage in motor-carrier business on the public highways. Obviously the legislature did not intend a railroad should be permitted to operate motor vehicles on the highways irrespective of the rights of other public carriers by rail or highway. This intent is also clearly disclosed by the proviso portion of the particular statute on which respondent relies. (R. S. 1933 Supp. 66-501a.) That proviso reads:

"That the exercise in this state of any powers hereby granted in all things shall be subject to all lawful requirements of the statutes of this state now or hereafter enacted with reference to certificates of convenience and necessity, permits, and public regulation in the same manner as like business conducted by private individuals or by corporations other than railroad corporations."

In *South End Motor Coach Co. v. Cleveland Ry. Co.*, P. U. R. 1930 B, p. 126, the Ohio public utilities commission held as follows:

"The commission has jurisdiction to determine whether or not a motor-propelled vehicle is being operated within the state in such a manner as to make the operator thereof a motor transportation company subject to regulation provided by law, p. 127.

"A street railway company has no more right to use the public highways to conduct a common-carrier business through the operation of motor buses, without first proving the convenience and necessity therefor and paying the required tax, than any other person or corporation, notwithstanding an alleged private contract with an amusement park company providing for the transportation of persons patronizing such a resort, p. 130." (Syl. ¶¶ 1, 2.)

In the course of the opinion it was said:

"The Cleveland Railway Company transported the public over this route and it cannot avoid the jurisdiction of the public utilities commission of Ohio by a private contract with another party. If this can be done, then there is no bus law in Ohio, and the state of Ohio would be compelled to maintain its highways and keep the same in repair for the use of companies operating as common carriers and the public utilities commission would be without authority.

"As far as the contract between the Cleveland Railway Company and the Geauga Lake Amusement Company is concerned it speaks for itself, but it cannot set aside the laws of the state of Ohio, neither can it bind the general public of the state of Ohio nor the public utilities commission of Ohio." (p. 130.)

In an opinion, on the application of the New York, New Haven & Hartford Railroad Company, before the Massachusetts department of public utilities, P. U. R. 1926 B, p. 338, it was held:

"A railroad corporation must secure from the department not only its approval of the railroad's engaging in motor-vehicle business and its finding as to the public convenience and necessity of the specific routes under chapter 125 of the Massachusetts Acts of 1925, but must also obtain from the department a certificate declaring that public convenience and necessity requires such operation under the provisions of chapter 280 of the Acts of 1925." (Syl. ¶ 4.)

The trial court held the order of the commission in the instant case was unlawful and unreasonable. In this connection the supreme court of Missouri, on appeal from the ruling of the public service commission of Missouri, in the case of State, ex rel. Railroad Co., v. Publ. Serv. Comm., 327 Mo. 249, 37 S. W. 576, P. U. R. 1931 D, held:

"Where there are duly certified motor-bus carriers already in the field furnishing adequate and satisfactory service, and willing and able to furnish any additional facilities and service which may be needed or which the public service commission may require, the order of the commission denying to a new motor-bus carrier a certificate of convenience and necessity, entitling it to enter the same field in unnecessary and perhaps destructive competition with such existing carriers, is neither unlawful nor unreasonable." (Syl. ¶ 2.)

In the course of the opinion the court said:

"As argued by respondents, the railroads have helped greatly to develop the country, they have large investments, can assure permanency of service and satisfaction for injuries from accidents, and they pay large sums in taxes. But, while such is true, other duly authorized public utilities are also entitled to consideration. As said in Monongahela West P. S. Co. v. State Road Commission (W. Va.), 139 S. E. 744, 748: 'The holder of the permit over the established route is entitled to the same protection and consideration as any other public utility.' To hold otherwise would be unwise policy as well as unjust." (p. 257.)

We have not overlooked the authorities cited by respondent.

C. J. 39, 65; *Graham v. Macon, D. & S. R. Co.*, 120 Ga. 757, 49 S. E. 75; *Green Bay, etc., R. R. Co. v. Union, etc., Co.*, 107 U. S. 98, 2 S. Ct. 221. These cases are not in point on the specific question here involved.

Respondent has never obtained a certificate of necessity and convenience. Having determined that respondent is in effect conducting a common-carrier business by motor vehicle it necessarily follows it must obtain a common-carrier certificate.

There is an additional reason for regulation by the commission in the instant case. It is involved in respondent's rate schedule under which it employs Blake. The commission has full authority to fix minimum rate schedules for contract carriers. R. S. 1933 Supp. 66-1,112f provides:

"The commission is hereby vested with power and authority and it is hereby made its duty to prescribe rules and regulations covering the operations of contract motor carriers in competition with common carriers of this state, and the commission shall prescribe minimum rates, fares and charges to be collected by such contract motor carriers."

According to the evidence, under the rate fixed in the railroad-Blake contract it is impossible to ascertain whether the rate schedule fixed by the commission is being violated. The contract rate is based on mileage alone which has no relation, so far as the record discloses, to tonnage moved. To permit such a practice to continue would nullify the above statute and the power of the commission to regulate contract carriers. Respondent contends the commission rate schedule was not in effect when the contract-carrier permit was issued. That is no justification for not complying with it now.

Respondent finally contends the order made by the commission is unconstitutional and void in that it violates the provisions of section 10 of article 1, of the United States constitution, which provides that: "No state shall . . . pass any . . . ex post facto law, or law impairing the obligation of contracts."

The basis of this contention is that Blake had obtained a permit as a contract carrier and had a valid contract with respondent which contract the order of the commission destroyed. The order did not abridge or impair the obligation of any valid contract. The order simply directed respondent to discontinue an unauthorized business. The order contains nothing to prevent Blake from receiving all the benefits of his contract with respondent when respondent conducts that particular portion of its business as the law requires. In *N. Y. C. Rd. Co. v. P. U. C.*, supra, it was held:

"An order which requires a common-carrier railroad to cease and desist from such traffic is not void upon the ground that it impairs the obligation of a contract between such common-carrier railroad and a trucking company which owns the trucks employed in such motor-transportation service." (Syl. ¶ 5.)

In the body of the opinion the court said:

"It is further urged that the ruling of the public utilities commission impairs the obligation of the contract between the railroad company and the Peek company and invades constitutional provisions. No specific authorities upon these points are given, and indeed could not be found. The courts have never held that a contract between private parties which would permit the evasion of a state statute will protect those parties from the operation of state law upon the ground of interference with the obligation of contracts. The statute itself is read into and becomes a part of the contract." (p. 600.)

We are of the opinion the order of the commission was neither unlawful nor unreasonable and the order of the district court setting it aside should be reversed. The cause is remanded with directions to the trial court to enter judgment affirming the order of the commission.