LIENHART *v.* BRYANT AND BRYANT *v.* LIENHART.

No. 4-7769, No. 4-7822                    192 S. W. 2d 530

Opinion delivered February 18, 1946.

*Ward Martin,* for appellant.

*O. W. Pete Wiggins,* for appellee.

*O. W. Pete Wiggins,* for appellant.

*Ward Martin,* for appellee.

GRIFFIN SMITH, Chief Justice.   For the purpose of an opinion two cases are consolidated: *Henry Lienhart* v. *L. F. Bryant,* and *L. P. Bryant, doing business as Bryant Bus Lines,* v. *Henry Lienhart, doing business as ·Houston-Bigelow Bus Lines.* The parties will be referred to as Lienhart, and Bryant.

In November, 1944, Lienhart applied to the Corporation Commission (now Public Service Commission) for a certificate of convenience and necessity authorizing him to operate a bus line.

Because of objections by carriers who contended they would be adversely affected unless certain restrictions were made, a stipulation between Lienhart and a carrier other than Bryant was filed with the Commission December 28th.

December 29th the Commission issued its certificate to Lienhart, authorizing him to operate in this way:

"State Highway 60 Perryville to Houston: Highways 60 and 113 Houston to Bigelow; Highway 113 Bigelow to

George's Store; County road George's Store to Roland; County Road Natural Steps to intersection of Highway 10 known as Joe T. Robinson; Highway 10 to Little Rock as follows: No authority is granted to pick up passengers between and including the Junction of county road and highway No. 10 (known as Joseph T. Robinson corner) and Little Rock for discharge between and including the Junction of county road and Highway No. 10 (known as the Joseph T. Robinson corner) and Little Rock, and the operation between said points shall be with closed doors. No authority is granted to pick up passengers at Perryville, Arkansas, and destined for Little Rock, Arkansas, or beyond and no passengers shall be picked up at Little Rock, Arkansas, and destined for Perryville, Arkansas, or beyond; also closed doors between Roland and Joe T. Robinson School House."

February 5, 1945, the Commission issued what was termed an amended order, but stated that the purpose was to clarify the certificate of December 29th "because said order has been misconstrued." It was then said that the order of December 29th was intended to invest Lienhart with authority to operate "over the following route:

"State Highway 60, Perryville to Houston; Highways 60 and 113, Houston to Bigelow; Highway 113, Bigelow to George's Store; County road George's Store to Roland; County Road, Natural Steps to intersection of Highway 10 known as Joe T. Robinson; Highway 10 to Little Rock, with the following restrictions: No authority is granted to pick up passengers between and including the Junction of county road and Highway No. 10 (known as Joseph T. Robinson corner) and Little Rock for discharge between and including the Junction of county road and Highway No. 10 (known as Joseph T. Robinson corner) and Little Rock, and the operation between said points shall be with closed doors. No authority is granted to pick up passengers at Perryville, Arkansas and destined for Little Rock, Arkansas, or beyond and no passengers shall be picked up at Little Rock, Arkansas and destined for Perryville, Arkansas or beyond. Under

this Certificate applicant is restricted from handling passengers from Roland to Little Rock and Little Rock to Roland and from Roland and intermediate points to Joseph T. Robinson school house and from Joseph T. Robinson school house and intermediate points to Roland. The operation from Roland to Joseph T. Robinson school house and in the reverse direction from Joseph T. Robinson school house to Roland shall be with closed doors."

An undated "stipulation to correct order" is in the record, signed by counsel representing Lienhart and Bryant. It mentions the order of December 29 and recites that an error was made by the Commission when substance of the original stipulation was incorporated in the certificate, ". . . in that the word 'inclusive' was omitted by the Commission in writing its final order." It was then agreed that the December 29th order be amended ". . . by adding the word 'exclusive' immediately after the phrase 'also closed doors between Roland and Joe T. Robinson School House'."

Difficulty in construing what the Commission did and in determining whether Pulaski Circuit Court erred in declining to interfere with the administrative order of February 5th (also difficulty in determining whether Pulaski Chancery Court erred in declining to enjoin Lienhart at Bryant's instance) is not met until Lienhart's operations approach the Little Rock area. Lienhart was given authority to use the designated highways from Perryville to Houston, then to Bigelow, and on to George's Store. At that point the route authorized is east and northeast over a county road, with a final sharp turn south to Roland. The questions are; Under the certificate what rights attach, beginning at Roland, thence to Natural Steps, and to the Joe T. Robinson School House, (where Highway No. 10 intersects) thence to Little Rock?

It is clearly expressed in the certificate of December 29 that "No authority is granted to pick up passengers *between and including* the junction of the county road with Highway 10 [the Joe T. Robinson School House] and

Little Rock for discharge *between and including*" the school house and Little Rock. While it might be argued that "between and including" as applied to the school house and Little Rock does not expressly say that in leaving Little Rock and proceeding west Lienhart is not prohibited from taking on passengers *at* Little Rock destined for the Robinson area—and some support for this contention may be found in subsequent language providing that ". . . no passengers shall be picked up at Little Rock and destined for Perryville or beyond—still a rational construction would exclude operations between the school house and Little Rock, each terminus included.

But the situation is different regarding Robinson School House and Roland, the restriction being that Lienhart shall operate *between* the two points with closed doors. There is nothing in the record showing that the Commission intended to prohibit Lienhart from taking on passengers *at* the stops in question; and as to those places the term "inclusive" is not applied. Nor did the December 29th order prevent the certificate-holder from taking on passengers *at* Roland and transporting them to Little Rock, or taking them on *at* Little Rock for passage *to* Roland. To this extent the authority originally given was circumscribed.

Section 14(a), Act 367, of 1941, provides that certificates may, upon application of the holder thereof, in the discretion of the Commission, be amended or revoked, in whole or in part, or may upon complaint, or on the Commission's own initiative, *after* notice and hearing, be suspended, changed, or revoked, etc.

A statutory requirement (Sec. 9(b), Act 367) is that before a certificate of convenience and necessity may issue in the first instance notice must be given the interested parties for at least twenty days. By clear implication the public is an interested party. This is true because its convenience and necessity are subjects of first concern. When notice has been given, a hearing had, and an opportunity to be heard has been extended to persons residing in the territory to be affected, the Commission has before it (presumptively) all information essential to a fair de-

termination of relative rights, including conflicting claims of competing carriers, or those who would be carriers; and certainly those who are to be served have not been ignored.

It appears to have been the legislative policy to safeguard rights by providing that changes in the transportation status could not be made without notice to "the interested parties." We think the act of a carrier in taking on or putting off passengers at a particular place in derogation of orders issued at a time when the public had been informed a hearing would be held, involves—or may involve—substantive matters in respect of which notice must be given. At least the General Assembly seems to have settled on such a formula; hence it was error for the Commission to impose the restrictions of February 5th in the way it did. This being so, Circuit Court should have adjudged the so-called amendment void.

The Chancellor declined to enjoin Lienhart from interfering with Bryant's business. Under the pleadings and proof, and in view of our determination of the Circuit Court appeal, this was not error, and the decree is affirmed. The Circuit Court judgment is reversed, with directions to set aside the Commission's amendment of February 5th.