ARKANSAS EXPRESS, INC., *v.* COLUMBIA MOTOR
TRANSPORT COMPANY.

4-8231                                              205 S. W. 2d 716

Opinion delivered October 6, 1947.

Rehearing denied December 1, 1947.

*Louis Tarlowski,* for appellant.

*Henry Donham,* for appellee.

ROBINS, J. Appellee, Columbia Motor Transport Company, a Delaware Corporation, made application to Arkansas Public Service Commission for certificate authorizing appellee to operate as a motor carrier of freight within this state. Appellants, thirty-three duly licensed motor freight carriers, filed protest and resisted the application. After an extended hearing the Commission granted the application and ordered the issuance of the certificate of convenience and authority as prayed for by appellee. The protesting carriers appealed to the Pulaski Circuit Court, where judgment affirming the Commission's order was rendered. This appeal is prosecuted from that judgment.

The service proposed by appellee and authorized by the Commission was to be rendered in accordance with a contract entered into between appellee and Guy A. Thompson, Trustee in Bankruptcy of Missouri Pacific Railroad Company, on March 19, 1946. This contract contemplated "a system of coordinated rail-motor-truck service, auxiliary to or supplemental of the Trustee's service by rail, for the handling of less-than-carload

freight . . . over certain highway routes and between stations on certain lines of railroad of Missouri Pacific Railroad Company, Debtor, located within the state of Arkansas. . . ." Under this contract appellee agreed to haul in motor trucks, along prescribed routes, from certain stations of the railroad company to certain other designated stations of the company, freight tendered to it by the railroad company. Appellee was to be compensated for this hauling on a mileage basis at such rates as should be thereafter agreed upon by the parties to the contract.

The trustee in bankruptcy of the railroad company was authorized to enter into this contract by order of the United States District Court, in which the bankruptcy proceeding was pending, and the trustee, supporting appellee's request, intervened in the proceeding before the Public Service Commission.

The proposed service was thus described by the Commission in its order:

"Missouri Pacific Railroad Company and its affiliated lines in Arkansas (hereinafter referred to collectively as Missouri Pacific) is a common carrier by rail and its system covers a large portion of the State of Arkansas. It currently has 269 stations on its lines in Arkansas. It desires to establish and operate a system of coördinated rail-truck service along its lines which will be auxiliary to and supplemental of its present service by rail for the handling of less than carload freight and merchandise, mail and express.

. . . . .

"Columbia proposes to assume full responsibility for compliance with the laws of Arkansas and the rules and regulations of this Commission. It is estimated that the proposed service will require the use of from twenty-five to thirty trucks. Columbia will charge Missouri Pacific for its services on a mileage basis to be determined later by the parties, but not to exceed the charges now being paid by Missouri Pacific for similar service in other states. The total mileage to be operated by Colum-

4

bia in Arkansas will be 1,946.84 miles which does not exceed the mileage allowed by the Arkansas law. Schedules will be coördinated with the movement of merchandise cars by Missouri Pacific between merchandise centers. . . .

"The service to be rendered by Columbia will be limited to stations now or hereafter located on the lines of Missouri Pacific. Columbia does not propose to file any schedules of rates to be charged to the shipping public by it, but will collect its charges from Missouri Pacific. . . .

"At the present time, less than carload freight of Missouri Pacific is handled exclusively by boxcars, and local way-freight trains. The cost to Missouri Pacific of rendering comparable service for less than carload freight by rail would be prohibitive. The handling of l.c.l. freight under the proposed plan will result in a substantial annual saving to Missouri Pacific. Experience in other states has proven that the distribution of l.c.l. freight by trucks as proposed in the application is the most satisfactory and economical means of handling this kind of freight.

"Under the proposed plan, the time consumed in handling l.c.l. freight will be substantially reduced. In some instances the time will be reduced as much as eight days. Under the existing service, a shipment from Pine Bluff to a point between Little Rock and Newport is delivered the next morning and between Knobel and Newport the delivery is the late afternoon of the next day. Under the proposed service, this shipment from Pine Bluff would be delivered the same night. . . .

"Of the 269 Missouri Pacific stations in Arkansas, there are 57 stations which are not now being served by a certificated motor carrier of freight. It is estimated that it would require the services of 38 existing motor freight carriers to perform the proposed services for Missouri Pacific. It is contended that under the proposed operations Missouri Pacific will continue to haul the same freight it is now hauling and that the only

change will be in the manner in which l.c.l. freight is handled between certain stations.

"Under the proposed plan, Missouri Pacific will operate merchandise cars daily, except Sunday, between the following points: Little Rock to McGehee; Little Rock to Wynne; Little Rock to Newport; Little Rock to Russellville; Little Rock to Fort Smith; Little Rock to Gurdon; Little Rock to El Dorado; Texarkana to Little Rock; Fort Smith to Little Rock; McGehee to Lexa; and McGehee to Little Rock. These points are designated as 'break-bulk points' and represent points at which sufficient l.c.l. freight is accumulated to justify the operation of a merchandise car.

"For illustration, a less than carload shipment originating at Pine Bluff and destined for Batesville would be taken from the door of the shipper to the freight depot of the Missouri Pacific at Pine Bluff by the Missouri Pacific pick-up and delivery service. The agent at the Missouri Pacific depot in Pine Bluff would issue a railroad bill of lading to the shipper. The shipment would then move by Columbia's truck to Little Rock. In Little Rock the shipment would be loaded in a merchandise car and moved by rail to Newport. It would be unloaded at Newport and then moved by Columbia's truck to Batesville. The reverse routing of this shipment from Batesville to Pine Bluff would be different. A shipment from Batesville to Pine Bluff would move all the way by Columbia's truck. The reason for this difference is that there is not enough l.c.l. freight originating in Newport and points north and northwest to justify the operation of a merchandise car from Newport to Little Rock. Less than carload freight destined for intermediate stations between break-bulk points will be handled by truck. . . . ''

Much of appellants' argument here is directed to their contention that appellee's operations will be those of a common carrier and not a contract carrier. With this proposition we agree. The Commission properly held that appellee will be a common carrier, and this holding is supported by the weight of authority. *State*

v. *Rock Island Motor Transit Company,* 209 Minn. 105, 295 N. W. 519; *Baldwin* v. *State Corporation Commission,* 143 Kan. 580, 56 P. 2d 453; *United States* v. *California,* 297 U. S. 175, 56 S. Ct. 421, 80 L. Ed. 567.

But, say appellants, every common carrier is required, under the provisions of Act 367 of the General Assembly of Arkansas, approved March 26, 1941, to haul freight at rates shown in a duly promulgated tariff, and not for the compensation agreed to be paid by the railroad company on mileage basis, and every common carrier must, under the law, issue a bill of lading for each shipment. And appellants argue that the proposed service will not comply with these two requirements. A sufficient answer to this contention is that the freight handled by appellee will be hauled for charges duly fixed in a properly filed and approved tariff; and a bill of lading will be issued by the railroad company for each shipment. The requirements as to filing of tariffs by carriers and as to issuance of bills of lading by them are primarily for the benefit of shippers and under the plan proposed by appellee shippers will have every protection as to freight rates, and as to evidence of the transportation contract, that the law intends. There is in the statute invoked no prohibition against a transportation service of the nature herein involved; and we conclude that failure of the lawmakers to authorize expressly such a service would not deprive the Commission of the power to grant permission for it.

Appellants also argue that the necessary showing of its financial ability to render the proposed service was not made by appellee. It appears from the record that, while the capital of appellee itself is relatively small, appellee is a subsidiary of Columbia Terminals, a larger corporation. The balance sheet of this latter concern showed net current assets of $334,960.57 and unappropriated surplus of $746,223.79. According to the finding of the Commission, Columbia Terminals has undertaken to subscribe and pay for an amount of the capital stock of Columbia sufficient to provide adequate funds for Columbia to carry on the proposed operation. The Com-

mission concluded that appellee was financially able to render the contemplated service; and we are unable to say that this conclusion was erroneous.

It is urged by appellants that the evidence does not support the finding of the Commission that public necessity and convenience require the additional transportation service contemplated by appellee's application. In considering this phase of the case it must be remembered that we are dealing with the finding of a tribunal erected by the Legislature for the special purpose of investigating and determining matters of the nature here involved; and the finding of such a tribunal on a fact situation may not be upset by the courts unless the finding is clearly against the weight of the testimony. This principle is recognized and the authorities supporting it are cited in the recent case of *Camden Transit Company* v. *Owen*, 209 Ark. 861, 192 S. W. 2d 757.

In the hearing before the Commission forty-eight witnesses, from many different localities in Arkansas, testified that the proposed service was needed and would greatly serve the convenience of the public. These witnesses were all businessmen, shippers of merchandise, and acquainted with traffic conditions. It was shown that fifty-seven of the stations on the railroad company's line, the shippers at which would benefit from the new plan for handling freight, had no motor freight truck service whatever. While the appellants offered to furnish their trucks to do the same hauling, along routes embraced in their respective licenses, as that proposed by appellee, this service of course would be of no avail to shippers in the fifty-seven towns not served by any of appellants. Furthermore, it was not shown that it would be practicable to coördinate the schedules of the thirty-three different haulers with those of the railroad company so as to make the plan suggested by them feasible.

Upon a careful review of the record we are unable to say that the Commission's finding and that of the lower court upholding the Commission are so contrary to the weight of the evidence as to authorize us to set same

8

aside. The new coördinated rail and truck service will doubtless be of great convenience to the shipping public, and, while the rights of those already in the transportation field must be taken into account in a proceeding of this kind, the paramount consideration is always the interests of the public, at whose expense the highways used in this type of transportation are built and maintained. "In granting certificates, the public convenience and necessity should be the first consideration, and the interest of public utilities already serving the territory secondary, . . . " Public Utilities by Pond, 4th Ed., § 913, p. 1849. *Santee* v. *Brady,* 209 Ark. 224, 189 S. W. 2d 907; *Lienhart* v. *Bryant,* 209 Ark. 764, 192 S. W. 2d 530; *Camden Transit Company* v. *Owen,* 209 Ark. 861, 192 S. W. 2d 757.

But under the order made by the Commission the service authorized was not limited to a rail and truck or truck and rail movement of freight. Under this order a hauling of freight by appellee's trucks from shippers at certain points to consignees at other points, without any preceding or succeeding movement by rail, is authorized. Now this would permit appellee, which is not a railroad corporation, to haul freight by motor truck—without any movement whatever by rail—on railroad bills of lading at rates fixed for rail transportation. While the testimony adduced before the Commission was sufficient to show the need of supplementing rail transportation of freight with a motor truck haul thereof, it did not show the necessity of any additional transportation facilities by motor truck only. The Commission should have provided that the authorization for the new service would permit only freight shipments that move partly by rail and partly by truck.

The judgment of the lower court is modified so as to require the Commission to amend the order appealed from by including therein this sentence: "Provided, that the service authorized by this order shall not include transportation of any freight in which there is not a *bona fide* movement by rail and truck or by truck and rail."

And, as so modified, the judgment of the lower court is affirmed.

## On Rehearing

ROBINS, J., on rehearing. In its petition for rehearing appellee insists that our direction for modification of its certificate of authority so as to require some rail movement on all traffic handled by it is erroneous. On the record before us we conclude that our order was proper; but, as this particular phase of the matter may not have been fully developed in the hearing before the Commission, we amend our former order so as to permit appellee, if it be so advised, to apply, in the regular manner, to the Commission for another hearing as to the propriety of the requirement for part rail haul as fixed by us, and to permit the Commission, should it find such order fair to all concerned and in the public interest, to amend or eliminate the requirement that all traffic handled by appellee have some rail haul; any such order, of course, to be subject to appeal in the manner provided by statute.