No. 37,957

THE ROCK ISLAND MOTOR TRANSIT COMPANY, a Corporation, and CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, a Corporation, *Appellees*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellant*.

No. 37,958

THE SANTA FE TRAIL TRANSPORTATION COMPANY, *Appellee*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellant*.

(219 P. 2d 405)

Opinion filed June 10, 1950.

*Jay Kyle,* general counsel, of Topeka, and *Blake A. Williamson,* of Kansas City, argued the cause, and *Earl B. Swarner,* assistant general counsel, of Topeka, and *Paul R. Wunsch,* of Kingman, were with them on the briefs for the appellant.

*Clayton M. Davis,* of Topeka, argued the cause, and *Mark L. Bennett,* of Topeka, and *Alfred Williams* and *M. C. Bucklin,* both of Pratt, were with him on the briefs for appellees, The Rock Island Motor Transit Company and Chicago, Rock Island & Pacific Railroad Company.

*C. J. Putt,* of Topeka, argued the cause, and *W. E. Treadway, Henry Schulteis, Jr.,* and *J. B. Reeves,* all of Topeka, were with him on the briefs for appellee, The Santa Fe Trail Transportation Company.

The opinion of the court was delivered by

PRICE, J.: These consolidated cases are an appeal by the State Corporation Commission of the state of Kansas (hereinafter referred to as Commission), from a judgment of the district court of Pratt County vacating and setting aside part of an order of appellant Commission granting to Boyd Truck Lines, Inc. (hereinafter referred to as Boyd) a certificate of convenience and necessity to operate as a common carrier of general commodities between certain points and over certain routes within the state of Kansas.

Appellees, The Rock Island Motor Transit Company, a corporation, and Chicago, Rock Island and Pacific Railroad Company, a corporation (both hereinafter referred to as Rock Island), and The Santa Fe Trail Transportation Company (hereinafter referred to as Santa Fe) are competing common carriers, each having operated over a portion of the territory involved herein for some time prior to the granting by appellant Commission of the certificate in question to Boyd.

On May 12, 1947, one Coulter, doing business as Rapid Transit Lines of Pratt, Kan. (hereinafter referred to as Coulter), filed an application with the Commission requesting a certificate of convenience and necessity to serve certain territory between Wichita, Liberal, Dodge City and return, and intermediate points between

Dodge City and Minneola. This application was docketed as No. 33,363-M and was set for hearing for June 12, 1947.

On May 24, 1947, Boyd filed an application with the Commission for a certificate of convenience and necessity to operate as a common carrier over substantially the same routes and territory as those in the Coulter application. The Boyd application was set for hearing for June 19, 1947, and was docketed as No. 33,445-M.

Hearing on the Coulter application was had on June 12, 1947. Boyd appeared at this hearing in support of public convenience and necessity of the proposed service, but protested it being granted to Coulter, contending that a certificate should be granted to him at the hearing on his application set for June 19, 1947. Rock Island and Santa Fe also appeared as protestants to the granting of a certificate to Coulter, contending that the territory and points involved were already being adequately served by existing, authorized common carriers, including protestants. It was stipulated by all parties and approved by the Commission's examiner that the entire record in the Coulter hearing would be incorporated into the Boyd hearing, set for the following week.

At the Boyd hearing, begun on June 19, 1947, Coulter appeared in support of public convenience and necessity of the proposed service but protested it being granted to Boyd, contending that it should be granted to him on his application on which hearing had already been had but no decision announced. Rock Island and Santa Fe also appeared as protestants at the Boyd hearing, their contentions being the same as in the Coulter hearing, that is, that the territory and points involved were already being adequately served by existing, authorized common carriers, including protestants. It was stipulated by all of the parties and approved by the Commission's examiner that the entire record in the Coulter hearing be incorporated into the record of the Boyd hearing. The testimony was concluded and the record closed, after which all parties filed briefs with the Commission.

Thereafter, on August 30, 1947, and while the Commission had the Coulter and Boyd applications under advisement, Boyd filed an application to amend and to reopen his original application in docket No. 33,445-M for further hearing. Rock Island filed its written objections to such amendment, reopening and further hearing.

On September 3, 1947, Coulter's application for a certificate was denied and on the same day Boyd's application to amend and reopen

his original application for further hearing was granted. Boyd then filed his amended application in the same docket and proceedings, asking for the same authority to the same points and territory as contained in his original application but adding other points and territory referred to as the "north and south route," being from Liberal north through Garden City, Scott City, Oakley and Colby to Atwood and Oberlin, and return, and from Dodge City to Garden City.

Coulter's application for a rehearing was denied on October 2, 1947, and he filed no application for review in any district court.

The hearing on Boyd's amended application was set for December 1, 1947, at Liberal, before the entire Commission. This hearing consumed three days, during which dozens of witnesses were heard and numerous exhibits offered and introduced. Both Rock Island and Santa Fe appeared as protestants at the hearing in Liberal. During the course of this hearing the Commission announced that it was a trial *de novo* and that nothing in the record of the hearing previously held would be considered. Following the three days of testimony the hearing was recessed for further hearing at Topeka, on January 20, 1948. Additional testimony was taken at the latter time and place and the record was closed. On January 28, 1948, the Commission issued its order granting a certificate of convenience and necessity to Boyd to operate as a motor common carrier of commodities between the points and over the routes designated in its amended application, with two exceptions, not presently important for our purposes.

Applications by Rock Island and Santa Fe for a rehearing were denied by the Commission on March 24, 1948, whereupon Rock Island filed its application for a review in the district court of Pratt county, and Santa Fe filed its application for review in the district court of Ford county.

The Commission did not file with the district courts of either Pratt county or Ford county the transcript of the record in the Coulter hearing or of the original Boyd hearing, apparently on the theory that since it had announced at the Liberal hearing on Boyd's amended application that it was a hearing *de novo* the testimony in such former hearings was no part of the record. A dispute on this point arose and the district court of Ford county ordered the Commission to file a transcript of the complete record of the Coulter hearing as well as the original Boyd hearing. This was done. Upon the Commission's application for a change of venue, the application

for review filed by Santa Fe in the district court of Ford county was transferred to the district court of Pratt county, in which court the two applications for review by Santa Fe and Rock Island were consolidated for hearing.

After reviewing the *entire* record, including the record of the proceedings in the Coulter and first Boyd hearings, the district court (Pratt county) found that the order of the Commission granting the certificate to Boyd on his amended application was unlawful and unreasonable and should be vacated and set aside insofar as it purported to grant a certificate of convenience and necessity to Boyd on the following routes:

"Wichita to Liberal, Mullinville to Garden City, Dodge City to Minneola, Wichita to Garden City, Sublette to Scott City, and intermediate points;"

Pursuant to G. S. 1935, 66-118k, the court made and filed its findings of fact and conclusions of law. The Commission's motions to set aside the findings and conclusions, for judgment notwithstanding the findings and conclusions, and for a new trial, being denied, these appeals were taken and were consolidated in this court. On December 21, 1949, on motion of appellant Commission, this court issued an order staying and suspending the order and judgment of the lower court pending the determination of the appeal.

In support of its argument for reversal of the lower court's decision the Commission assigns twelve specifications of error and in its brief poses five questions for determination. A careful examination of these alleged errors and the questions presented leads to the conclusion that, boiled down to their real essence, the position of the Commission can be stated thusly:

1. The lower court had no power and authority to review the record in the Coulter and first Boyd hearings as such proceedings constituted no part of the record before the Commission following its ruling during the course of the Liberal hearing on Boyd's amended application that that hearing was a trial *de novo*. In support of this contention the Commission relies upon the provisions of G. S. 1935, 66-118f, which, so far as pertinent here, provide:

"No new or additional evidence may be introduced upon the trial or any proceedings for review under the provisions of this act, but the cause shall be heard upon the questions of fact and law presented by the evidence and exhibits introduced before the Commission and certified by it: . . ."

2. That the order of the Commission in granting a certificate of convenience and necessity to Boyd was an order purely administrative in character, rather than judicial, and that the court had no power and authority to weigh the evidence and to substitute its judgment for that of the Commission.

Concerning the first mentioned proposition, the record shows that

in the Coulter hearing on June 12, 1947, it was stipulated by all parties, including Boyd, and approved by the Commission's examiner, that the entire record would be incorporated into the Boyd hearing which was set for June 19, 1947. In the Boyd hearing it was also stipulated by all parties and approved by the Commission's examiner, that the record of the Coulter proceedings would be incorporated into the record of the Boyd hearing. Later Boyd petitioned for leave to amend and reopen for further hearing his original application in docket No. 33,445-M. He was granted permission to do so and subsequently a three-day hearing, before the entire Commission, was held at Liberal. It is to be kept in mind that Coulter's application and Boyd's original application sought to serve substantially identical routes and territory, and that the only substantial and material distinction between Boyd's original and amended applications was that the latter included a "tacking on" of the so-called "north and south route." Just why the Commission during the Liberal hearing announced that it was a trial *de novo* and that it was not considering any of the evidence previously taken in the Coulter or original Boyd hearing is not made clear in the record before us. It is true that under the provisions of G. S. 1935, 66-118f, *supra,* the district court on review is not permitted to go outside of the record of proceedings before the Commission. As we view this matter, the district court of Ford county was correct in ordering the Commission to file a transcript covering those two previous hearings, and we think the district court of Pratt county was entirely correct in reviewing such *entire* record. We find no merit in appellant Commission's contentions in this respect.

Before taking up the second point urged by the Commission as a ground for reversal, namely, that the lower court had no power or authority to weigh the evidence in the record and to substitute its judgment for that of the Commission, it is well to examine several provisions of the statutes relating to these matters.

G. S. 1935, 66-1,112, vests the Commission with power and authority to license, supervise and regulate every public motor carrier of property and to approve reasonable rates and charges. The first portion of G. S. 1935, 66-1,114, renders it unlawful for any public motor carrier to operate as a carrier of intrastate commerce without first obtaining from the Commission a certificate of convenience and necessity. G. S. 1935, 66-1,129, authorizes the Commission to promulgate such rules and regulations as may be deemed necessary

properly to carry out the provisions and purposes of the act.

G. S. 1935, 66-118b, provides that no cause of action arising out of any order or decision of the Commission shall accrue in any court until application for a rehearing before the Commission has been made. G. S. 1935, 66-118c, provides for a *review* by the district court of an order of the Commission.

G. S. 1935, 66-118d, relating to such review proceedings in the district court, reads in part:

". . . Said proceedings for review shall be for the purpose of having the lawfulness or reasonableness of the original order or decision or the order or decision on rehearing inquired into and determined, and the district court hearing said cause shall have the power to vacate or set aside such order or decision on the ground that such order or decision is unlawful or unreasonable. . . . The procedure upon the trial of such proceedings in the district court and upon appeal to the supreme court of this state shall be the same as in other civil actions, except as herein provided. . . ."

G. S. 1935, 66-118k, provides in part:

"If the court shall find that the order or decision of the public service commission is unlawful or unreasonable in whole or in part and shall vacate or set aside the order or decision in whole or in part, the court shall make findings of fact and conclusions of law, . . ."

This brings us right down to what we consider to be the real crux of this lawsuit, namely—just what is the scope of review and with what power and authority is a district court vested in a proceeding such as this? The statute, G. S. 1935, 66-118d, *supra,* provides that the proceedings for review shall be for the purpose of determining the lawfulness or reasonableness of an order of the Commission, and that if the court finds such order to be unlawful or unreasonable it shall vacate or set it aside. Appellant Commission complains that here the district court was guilty of weighing the evidence in the record and then substituting its own judgment for that of the Commission, and it is argued that since the granting or withholding of a certificate of convenience and necessity is purely administrative in character, rather than judicial, the court cannot do so. (*Kansas Gas & Electric Co. v. Public Service Com.,* 122 Kan. 462, 251 Pac. 1097.) For the determination of the question before us we do not consider it material or necessary to attempt any finespun distinction between so-called administrative orders and those of a judicial nature—what we are concerned with is the scope of review of the district court.

Appellant Commission also argues that where there is any evi-

dence in the record to sustain the findings of the Commission the district court on review cannot disturb them and cannot substitute its judgment for that of the Commission, and relies on *Wichita Gas Co. v. Public Service Com.,* 132 Kan. 459, 295 Pac. 668, and *Southern Kansas Stage Lines Co. v. Public Service Comm.,* 135 Kan. 657, 11 P. 2d 985.

We do not consider what was said in that respect in those two decisions to be authoritative or controlling under the facts of the case before us, as will be demonstrated later.

But touching briefly on the authority of the district court to "weigh" the evidence, we fail to see how the court could intelligently determine the lawfulness or reasonableness of the Commission's order without a careful study and review of the evidence, and this necessarily includes not only its right but also its duty to weigh the evidence. In commenting orally on the matter, at the time its decision was rendered, the district court said:

". . . But, it is my opinion, that it is the duty of this court to determine the lawfulness and reasonableness of the order of the Commission, and the only way I can determine that is to familiarize myself with the entire evidence and the record in the case and, naturally, I have had to weigh some testimony. However, I do not think it has been a great deal, if any, because you can take the Commission's orders themselves and get a most sufficient view of all the facts in the case."

How else could a court intelligently determine the lawfulness or reasonableness of the Commission's order? To hold otherwise would, from a practical standpoint, result in the emasculation of the statutory mandate giving the district court power to determine the lawfulness and reasonableness of an order of the Commission. In the quite recent case of *Union Pac. Rld. Co. v. State Corporation Commission,* 165 Kan. 368, 194 P. 2d 939, this court held that the function of a district court in proceedings for review of an order made by the Commission is limited to the inquiry whether the order made is lawful or reasonable and that in the exercise of that function the court is required to weigh the evidence, review the entire record and base its decision upon all the facts and circumstances contained therein. The Commission seeks to avoid the effect of that decision on the ground that the question there involved (an order of the Commission denying an application of a common carrier to discontinue passenger train service) was judicial in nature rather than administrative, such as it is contended we have here. We do not

think any such fine distinction is warranted. In our opinion the district court has a duty to review the evidence introduced before the Commission, not merely to ascertain if there is any evidence to support the Commission's order but to ascertain if such order is unlawful or unreasonable, and in so doing it necessarily follows that it must weigh the evidence. To hold otherwise would render the statute a farce.

For a proper understanding and discussion of the claim that in vacating and setting aside part of the Commission's order granting a certificate to Boyd the court substituted its judgment for that of the Commission, it is necessary to get an over-all picture of the whole proposition involved. Anyone familiar with a map of Kansas will readily understand that the Coulter application and the original Boyd application were for an east and west route. This route was already being served by Rock Island and Santa Fe, as well as by other common carriers operating under certificates authorized by the Commission. Boyd's amended application included the same territory contained in his original one but added other points and territory known as the north and south route, being from Liberal north through Garden City, Scott City, Oakley and Colby to Atwood and Oberlin and return, and from Dodge City to Garden City. In its order of September 3, 1947, denying Coulter's application for the east and west route, the Commission stated:

". . . The testimony in support of the application suggests no limitation as to service to points and places not now served in a reasonably adequate and sufficient manner by existing common carriers other than the restrictions set forth in the application itself. . . . The evidence in this case is insufficient to prove a public need which amounts to public convenience and necessity as that term is used in the statute and it follows that the application should be denied."

In its order of January 28, 1948, granting a certificate to Boyd over the routes designated in his amended application, the Commission, in referring to the service already existing on the east and west route, stated:

"The evidence indicates some dissatisfaction with respect to the adequacy and efficiency of existing service between Liberal and Wichita and Garden City and Wichita and intermediate points along the routes involved. Even so, it is doubtful that the Commission could find as a matter of fact, under the evidence offered, that standing alone, the existing east and west service was not reasonably adequate and sufficient. This, however, is not the question before the Commission. The question before the Commission is the question of

public convenience and necessity involved in the service as a whole, authority for the institution and performance of which is sought in this proceeding."

and in referring to the north and south route stated:

". . . The institution and maintenance of this essential north and south service on a sound economic basis, however, is dependent upon, and is an inseparable part of, the unified and integrated service as a whole which is proposed under the application."

The Commission further found:

"The evidence indicates and the Commission further finds, however, that there is now reasonably adequate, sufficient and efficient service available between Wichita, Kansas, proper, on the one hand, and Oakley and Colby, Kansas, proper on the other, and the public convenience and necessity neither justifies or requires the institution of the additional service proposed between these points. The application as to this feature should be denied."

In other words, in both the Coulter order and the Boyd order the Commission found that the existing east and west service was reasonably adequate and sufficient to supply the need, and in the latter order further found that existing service between Wichita, on the one hand, and Oakley and Colby, on the other, was reasonably adequate and sufficient to supply the need, but then went ahead and authorized Boyd to operate over both routes, the only limitation being:

". . . that no service is to be offered or performed at any intermediate points along U. S. Highway 54 located between Wichita and Pratt; or between Wichita proper, on the one hand, and Oakley proper or Colby proper, on the other; and, *Provided further,* that no service is to be offered or performed at any intermediate points located along the alternate route above described herein." (Alternate route referred to was from Dodge City south via U. S. Highway 283 to Minneola and return.)

From the foregoing it will be seen that the Commission's justification for the issuance of a certificate to Boyd over a considerable portion of the east and west route, which it found was already being adequately served, was that from the over-all standpoint the north and south route was dependent upon and was an inseparable part of the unified and integrated service, as a whole, proposed under Boyd's amended application. In other words, the Commission considered the two routes as a unit.

In the district court Rock Island and Santa Fe contended, among other things, that the Commission's order was unlawful and unreasonable for the reason that it completely ignored the mandate of the statute to the effect that if it appears from the evidence the service furnished by existing carriers is reasonably adequate the Commission shall not grant an additional certificate. It was further ar-

gued that under the statute in the event the Commission finds that any public carrier is not giving convenient, efficient and sufficient service, as ordered, such carrier shall be given a reasonable time to provide such additional service before any existing certificate is revoked or a new certificate granted.

The last part of G. S. 1935, 66-1,114, *supra*, provides:

". . . Before granting a certificate to a public motor carrier, the commission shall take into consideration other existing transportation facilities in the territory for which a certificate is sought, and in case it appears from the evidence that the service furnished by existing transportation facilities is reasonably adequate, the commission shall not grant such certificate."

G. S. 1935, 66-1,129, *supra*, in part provides:

". . . Upon the commission finding that any public carrier does not give convenient, efficient and sufficient service as ordered, such public carrier shall be given a reasonable time to provide such service before any existing certificate is revoked or a new certificate granted."

In its written findings and conclusions the district court in effect held that in the face of these last quoted portions of the statutes the action of the Commission in granting an overriding and competitive certificate to Boyd on the east and west route was unlawful and unreasonable in view of the Commission's finding that adequate and sufficient service on that route was already existing. The substance of finding of fact number 13 is that while there was considerable evidence of a lack of north and south service from Liberal on the south to Oakley, Atwood, Oberlin and Colby on the north, yet there was no material evidence of any need, convenience or necessity for such north and south service to commence at Wichita, serving intermediate points to Dodge City and Liberal, in view of the Commission's finding as to existing, adequate service available between Wichita, on the one hand, and Oakley and Colby on the other.

As heretofore stated, the Commission justifies its order on the ground that the east and west route and the north and south route are to be considered as a unit. Assuming, but not conceding, that the two routes were properly considered as a *unit*, still there is nothing in the record to indicate that existing carriers operating over the east and west route, including Rock Island and Santa Fe, were ever given the opportunity to provide such further service on the north and south route in compliance with the provisions of G. S. 1935, 66-1,129, *supra*. In theory, at least, it would seem just as logical to regard the two routes as a unit for the purpose of *existing* cer-

tificate holders, including Rock Island and Santa Fe, as well as for one seeking a *new* certificate to operate over both routes.

In *Baldwin v. State Corporation Comm.*, 143 Kan. 580, 56 P. 2d 453, it was said:

"It clearly appears one of the main purposes of the act is to protect common carriers by rail and common carriers by motor vehicle alike in territory where there exists sufficient common-carrier service to adequately meet the public needs." (p. 585.)

Here the district court found that in view of the pertinent statutes, the Commission, under its own findings, particularly with reference to the adequacy of existing east and west service, acted arbitrarily and that its order granting the certificate to Boyd was unlawful and unreasonable in certain respects.

We suppose that in any case such as this where an order of the Commission is vacated or set aside by a district court the complaint could be made that the court was, in one sense of the word at least, substituting its judgment for that of the Commission. However, to hold that it does not have the power to vacate or set aside an order found to be unlawful or unreasonable would of course render the statute meaningless. For a discussion of those terms see *Southern Kansas Stage Lines Co. v. Public Service Comm.*, supra.

We have examined the record before us and hold that the judgment of the district court vacating and setting aside a portion of the order of the Commission as being unlawful and unreasonable was justified and should not be disturbed.

In conclusion, let it be understood that our decision in this case is in no way to be interpreted as a modification or change of the fundamental law of this state which grants to the State Corporation Commission full and exclusive authority and jurisdiction over the issuance or refusal of certificates of convenience and necessity to applicants seeking to operate as common carriers in intrastate commerce. In such instances the Commission should be and is clothed with a wide discretion and its orders, when based on substantial, competent evidence, are final unless vacated or set aside as unlawful or unreasonable by a reviewing district court in accordance with the statute. Furthermore, a district court is not authorized to vacate or set aside such an order based on substantial, competent evidence and to substitute its judgment for that of the Commission merely on the ground that it would have arrived at a different conclusion from the evidence adduced had it been sitting as the trier

of the facts rather than the Commission. A district court is authorized to vacate or set aside the order only when, from a review of the entire record, it finds it to be unlawful or unreasonable.

It therefore follows that our order of December 21, 1949, staying and suspending the order and judgment of the district court is hereby dissolved, vacated and set aside, and the judgment of the district court is affirmed.

SMITH, J., dissenting.

PARKER and WERTZ, J. J., dissent from subdivision (2) of paragraph 5 of the syllabus and corresponding portion of the opinion.