No. 44,618

THE STATE OF KANSAS, ex rel. ROBERT C. LONDERHOLM, Attorney General, THE KANSAS STATE BOARD OF REVIEW and POLLY KIRK, KITTY McMAHON and MARY TREHEY, as Members of Said Board, *Appellants*, v. COLUMBIA PICTURES CORPORATION, *Appellee*.

(417 P. 2d 255)

Opinion filed July 27, 1966.

*Richard H. Seaton,* Assistant Attorney General, of Topeka, argued the cause, and *Robert C. Londerholm,* Attorney General, was with him on the briefs for appellants.

*John Anderson, Jr.,* of Olathe, argued the cause, and *David W. Carson,* of Kansas City, was with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The Kansas Motion Picture Censorship Act makes it unlawful for any person to sell, lease, exhibit or use any motion picture film in this state unless the film has been submitted to and received a prior certificate of approval from the Kansas State Board of Review, and it imposes criminal sanctions on any person who violates the Act. (K. S. A. 51-101-112; 74-2201-2209.)

On October 5, 1965, Columbia Pictures Corporation informed the Kansas Board of Review that henceforth it would submit no further films intended for exhibition or distribution in Kansas to the Board for its approval. Acting on the assumption that *Freedman v. Maryland,* 380 U. S. 51, 13 L. Ed. 2d 649, 85 S. St. 734, decided March 1, 1965, which struck down the Maryland Motion Picture Censorship law, rendered the Kansas Motion Picture Censorship Act unconstitutional under standards therein announced, Columbia exhibited the motion picture films entitled "Bunny Lake is Missing" and "Bedford Incident" in various Kansas theaters without submitting the films to the Board and receiving its prior certificate of approval. Since October 5, 1965, Columbia has followed a deliberate policy of leasing and delivering to Kansas distributors, films which have not been submitted to and approved by the Board.

The state of Kansas, on relation of the attorney general, commenced this action seeking to enjoin Columbia from selling, leasing, exhibiting or using motion picture films in Kansas which had not been submitted to the Board for its prior approval. Columbia answered and admitted the factual allegations. In a counterclaim it sought a declaratory judgment that the Kansas system of prior review of motion pictures, in its entirety, was an unconstitutional impairment of freedom of speech and expression, in that it wrongfully (1) imposed upon film distributors or exhibitors, final determination of the issue of obscenity by an administrative board rather than a judicial determination; (2) imposed the burden of instituting judicial proceedings upon the distributor or exhibitor

rather than the Board, and (3) failed to fix a procedure for timely judicial review of any administrative censorship action.

On the issues framed by the pleadings, both parties moved for summary judgment. (K. S. A. 60-256.) The district court sustained Columbia's motion, holding the system of censorship as established by K. S. A. 51-101 through 51-114 and K. S. A. 74-2201 through 74-2209 was unconstitutional, and granted an injunction enjoining the Board from enforcing any provisions of the Act.

The facts are not in dispute, and neither film is challenged as being obscene. The sole question presented is one of law: Is the Kansas Motion Picture Censorship Act constitutional?

A Maryland statute prescribing motion picture censorship was held invalid in *Freedman v. Maryland,* supra. The statute was similar to our own, and was stricken down for the reasons that (1) upon the censor's disapproval of a film, the owner or lessee must assume the burden of instituting judicial proceedings and of persuading the courts that the film was protected expression; (2) once the censor had acted against a film, exhibition was prohibited pending judicial review, however protracted, and (3) no assurance of prompt judicial determination was afforded.

Motion pictures are within the basic protection of the First and Fourteenth Amendments to the Constitution of the United States and legislation requiring, as a prerequisite to public exhibition, the submission of a motion picture to an administrative board, is not *ipso facto* invalid under those amendments, provided it affords the procedural safeguards required by the Constitution of the United States. In *Freedman* the Supreme Court of the United States stated that prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedures designed to obviate the dangers of a censorship system. It was said the procedural safeguards must include:

". . . First, the burden of proving that the film is unprotected expression must rest on the censor. As we said in *Speiser v. Randall,* 357 U. S. 513, 526, 'Where the transcendent value of speech is involved, due process certainly requires . . . that the State bear the burden of persuasion to show that the appellants engaged in criminal speech.' Second, while the State may require advance submission of all films, in order to proceed effectively to bar all showings of unprotected films, the requirement cannot be administered in a manner which would lend an effect of finality to the censor's determination whether a film constitutes protected expression. The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure re-

quiring a judicial determination suffices to impose a valid final restraint. See *Bantam Books, Inc. v. Sullivan, supra; A Quantity of Books v. Kansas,* 378 U. S. 205; *Marcus v. Search Warrant, supra; Manual Enterprises, Inc. v. Day,* 370 U. S. 478, 518-519. To this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. Moreover, we are well aware that, even after expiration of a temporary restraint, an administrative refusal to license, signifying the censor's view that the film is unprotected, may have a discouraging effect on the exhibitor. See *Bantam Books, Inc. v. Sullivan, supra.* Therefore, the procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license." (pp. 58, 59.)

The Kansas Motion Picture Censorship law was enacted in 1917 (L. 1917, Ch. 308), and the pertinent provisions are contained in K. S. A. 51-101, *et seq.*, which are summarized.

K. S. A. 51-102 makes it unlawful for any person to lease or exhibit any motion picture film unless it has been submitted to ". . . and duly approved by the Kansas board of review . . ." K. S. A. 51-103 provides that the Board shall examine films ". . . and shall approve such films . . . which are moral and proper; and shall disapprove such as are cruel, obscene, indecent or immoral, or such as tend to debase or corrupt morals: . . ." K. S. A. 51-104 provides for a certificate of approval to be furnished by the Board for such films as are by it approved. K. S. A. 51-107 provides that if any person be aggrieved by action of the Board of Review, he may have redress by commencing proceedings in the Wyandotte district court, *"Provided, however,* That the beginning or pending of any such proceedings shall not abate or suspend the action of the board until the final disposition of such proceedings by the court." K. S. A. 51-108 empowers members of the Board or their authorized representatives to prevent the display or exhibition of any film which has not been duly approved by the Board. K. S. A. 51-111 makes violation of any provision of the Act or any regulation of the Board a misdemeanor punishable by fine and jail sentence and ". . . [e]ach day an uncensored film, or reel, is exhibited shall be deemed a separate offense."

It is readily apparent the Kansas procedural scheme does not satisfy the criteria of *Freedman.* First, once the Board disapproves a film, the exhibitor is required to assume the burden of instituting judicial proceedings and of persuading the courts that the film is

protected expression. Second, once the Board has acted against a film, exhibition is prohibited pending judicial review, however protracted, and an exhibitor may be convicted if it shows a film after unsuccessfully seeking a license, even though no court ever rules on the obscenity of the film. Third, no assurance is provided for a prompt judicial determination. The only provision therefor being in 51-107, which provides that an action commenced by the party aggrieved shall not abate or suspend the action of the Board until finally determined by the court. These are the same procedural defects *Freedman* declared existed in the Maryland statute.

A careful examination of the Kansas Censorship System (51-101–51-112; 74-2201–74-2209) compels the conclusion the Act fails to limit a restraint imposed by the Board of Review upon exhibition of motion picture films in advance of final judicial determination of obscenity. By legislative mandate, a film may not be exhibited during the period the aggrieved party seeks judicial redress from censor action. Likewise, the Act shows the absence of any provision for placing upon the censor the burden of proving a film is obscene, or limits the period of time the Board has either to issue a certificate of approval, or petition the court for a restraining order, nor does its provisions assure a prompt final judicial determination of obscenity.

There is a heavy presumption against the constitutional validity of prior restraints of expression, and based upon standards declared to exist in *Freedman*, we are compelled to hold the Kansas Act fails to provide the adequate procedural safeguards against undue inhibition of protected expression, and thus the requirement of prior submission of such films to the Board of Review is an invalid previous restraint in violation of the First and Fourteenth Amendments to the Constitution of the United States.

To avoid the foregoing conclusion, the state contends the validity of the Kansas System of Review must be considered in connection with rules and regulations adopted by the Board on April 26, 1965, and viewed as a whole, the System does not violate the Constitution of the United States. On that date, the Board amended its general rules and regulations and adopted new rules and regulations numbered 18-1-1 to 18-1-16, effective January 1, 1966, specifically to supplement the Act so as to make it comply with all of the procedural safeguards declared in *Freedman*, and filed the same with the Revisor of Statutes in accordance with K. S. A. 77-405–77-414.

The rules and regulations were adopted pursuant to K. S. A. 74-2208 which reads:

"The board may make and adopt such reasonable rules and regulations as it may deem necessary, *not inconsistent with the laws of the state, for enforcing the provisions of this act.*" (Emphasis supplied.)

It is claimed that pursuant to this authority, the Board of Review's amended regulations (1) provide for re-examination of a film previously disapproved; (2) places a time limitation on the Board's approval or disapproval, and (3) provides for filing of proceedings by the Board to restrain exhibition of a film disapproved. The regulations here pertinent read:

"18-1-6.   No film shall be disapproved by the Board unless it is obscene within the meaning of Rule 18-1-15. If, after a film has been disapproved, the applicant desires to resubmit it to the Board in a changed form, he may do so without payment of additional fees, and the film shall be re-examined by the Board.   The applicant or his agent shall have the right to be present at such re-examination.   No certificate of approval shall be issued for such a film until it has been submitted to, and approved by, the Board.

"18-1-7.   If the Board approves a film as initially submitted, it shall so notify the applicant within two days after the film is received by the Board. If the Board disapproves a film, it shall so notify the applicant within one day after the film is received by the Board.   *Within two days after receipt of a film which has been disapproved, the Board shall file proceedings to restrain its distribution and showing,* unless requested by the applicant not to do so, in order that the film may be resubmitted pursuant to Rule 18-1-6.   *Upon the filing of such proceedings, the Board may request a temporary order restraining the distribution and showing of the film for a period of not to exceed four days.*

"18-1-8.   The notice required under Rule 18-1-7 shall be by telegraph, or by telephone with written confirmation to follow.   In computing the time within which an act is to be performed under Rule 18-1-7, Saturdays, Sundays and legal holidays shall be excluded." (Emphasis supplied.)

The state argues that 51-107, providing for redress in the district court of Wyandotte County by any person aggrieved by Board action, does not provide that such redress is the exclusive means for judicial review; that it deals only with actions initiated by persons other than the Board, not with an action in which the Board is the moving party, and this court should not strike down Rule No. 18-1-7 as being in contravention of the statute providing for judicial review.   It is also urged it is a well-settled rule of this jurisdiction that in the construction of a statute, and particularly one of this character, the interpretation placed upon it by an administrative agency whose duties are to carry the legislative policy into effect, should be

given great weight and may be entitled to controlling significance where the scope and limitations of such powers must be determined in judicial proceedings. (*Southwestern Bell Telephone Co. v. Employment Security Board of Review*, 189 Kan. 600, 607, 371 P. 2d 134, 93 A. L. R. 2d 1312, and cases cited.) Further, that where a statute does not provide for notice required by due process, a requirement of such notice will be read into the statute by the court, in order to uphold its validity, unless the language of the statute excludes such construction. (*Cities Service Gas. Co. v. State Corporation Commission*, 192 Kan. 707, 713, 391 P. 2d 74.) See, also, the recent case of *State, ex rel., v. A Quantity of Copies of Books*, 197 Kan. 306, 416 P. 2d 703.

Under 77-405, rules and regulations adopted by an administrative board to carry out a policy declared by the legislature, have the force and effect of laws. Generally speaking, the power of an administrative board to adopt rules and regulations is limited by the statute granting it such power. The extent of the power must be determined by the purpose of the act and difficulties its execution might encounter. The power to adopt rules and regulations is administrative in nature, not legislative, and to be valid, must be within the authority conferred. An administrative rule and regulation which goes beyond that which the legislature has authorized, which is out of harmony with or violates the statute, or which alters, extends, limits or attempts to breathe life into the source of its legislative power, is said to be void. Likewise, the power to adopt rules and regulations is not the power to "legislate" in the true sense, and under the guise of a rule and regulation, legislation may not be enacted. (42 Am. Jur., Public Administrative Law, §§ 53, 99, 102, pp. 359, 360, 428, 429, 432, 433; 1 Am. Jur. 2d, Administrative Law, § 72, pp. 868, 869; 2 Am. Jur. 2d, Administrative Law, § 300, pp. 126, 127, 128; 73 C. J. S., Public Administrative Bodies and Procedure, § 94, pp. 413, 414.)

Are the rules and regulations adopted by the Board on April 26, 1965, authorized by the statute? We think not. It will be observed the scope of the power granted in 74-2208 deals with the power of the Board to make and adopt reasonable rules and regulations deemed necessary, not inconsistent with the laws of this state, for enforcing the provisions of the Act. The power granted is not the power to make rules and regulations which supersede existing laws enacted by the constituted lawmaking body, nor amend any law

enacted for the purpose of motion picture censorship. The authority to declare the public policy of this state is vested in the legislature, not an administrative board, such as the Board of Review. (*Reser v. Southern Kansas Mutual Ins. Co.,* 150 Kan. 58, 64, 91 P. 2d 25.) Indeed, the policy announced by the Board of Review in adopting the regulations in question does not present a case where the legislature has enacted a law whereby its declared policy was to be made effective. (*Brown v. Illinois Bankers Life Assur. Co.,* 144 Kan. 670, 63 P. 2d 165; *Stanley v. United Iron Works Co.,* 160 Kan. 243, 255, 160 P. 2d 708.) What the Board of Review has attempted to do is to cure constitutional defects in the Act by the promulgation and filing of rules and regulations adopted by it for that purpose. The lawmaking power of this state is vested in the legislature and the Board cannot breathe constitutional life into a statute by rules and regulations. If the legislature desires to adopt the policy of complying with procedural safeguards declared in *Freedman* as the law of this state, it should incorporate those requirements in a bill and give it a title and an enacting clause and pass it through the Senate and the House of Representatives by a constitutional majority, and give the governor a chance to approve or veto it, and then submit it to the Secretary of State for publication.

We conclude that, as applied to this case, the rules and regulations adopted by the Board of Review were unauthorized for the reason they were in direct contravention of the express terms of the Act.

The judgment is affirmed.