No. 44,931

CITIES SERVICE GAS COMPANY, a corporation, NORTHERN NATURAL
GAS COMPANY, a corporation, NATURAL GAS PIPELINE COMPANY
OF AMERICA, a corporation, *Appellees,* v. STATE CORPORATION
COMMISSION OF KANSAS, William L. Mitchell, Chairman, James O.
Greenleaf and Harry G. Wiles, as members of said Commission,
and their respective successors in office, *Appellant.*

(440 P. 2d 660)

Opinion filed May 11, 1968.

*Ray E. Cooley,* of Topeka, and *Rex L. Culley,* of Russell, argued the cause, and *E. Edward Johnson,* of Topeka, was with them on the brief for appellant.

*Daniel R. Hopkins,* of Oklahoma City, Oklahoma, argued the cause, and *Charles V. Wheeler, Conrad C. Mount,* of Oklahoma City, Oklahoma, and *Mark H. Adams* and *Mark H. Adams, II,* of Wichita, were with him on the brief for appellee Cities Service Gas Company.

*Mark H. Adams,* of Wichita, argued the cause, and *F. Vinson Roach, Jack C. Osborne* and *John Will,* of Omaha, Nebraska, and *Charles E. Jones, Wm. I. Robinson, J. Ashford Manka, Clifford L. Malone, Mark H. Adams, II, John S. Seeber, Floyd E. Jensen, Philip L. Bowman, Robert Hall* and *Joe Rolston,* all of Wichita, were with him on the brief for appellee Northern Natural Gas Company.

*Dean E. Peterson,* of Chicago, Illinois, argued the cause, and *Charles C. McDugald,* of Chicago, Illinois, and *Mark H. Adams* and *Mark H. Adams, II,* of Wichita, were with him on the brief for appellee Natural Gas Pipeline Company of America.

The opinion of the court was delivered by

FATZER, J.: This court is asked by the State Corporation Commission to review an order issued on April 28, 1965, by which the commission asserted jurisdiction over all interstate natural gas pipeline companies operating within Kansas which make direct mainline sales of natural gas to Kansas industrial consumers from their facilities located within the state. The district court held the order to be invalid and void and directed that it be set aside. The commission has appealed.

The proceeding out of which this appeal arises was commenced

on January 21, 1964, Docket No. 73-100-U, by the commission's issuance of its "Show Cause Order" directing the following named interstate natural gas pipeline companies operating within the state of Kansas: Cities Service Gas Company (Cities Service), Oklahoma City, Oklahoma; Colorado Interstate Gas Company (Colorado Interstate), Colorado Springs, Colorado; Kansas-Colorado Utilities, Inc. (Kansas-Colorado), Colorado Springs, Colorado; Michigan-Wisconsin Pipe Line Company (Michigan-Wisconsin), Detroit, Michigan; Natural Gas Pipeline Company of America (Natural Gas), Chicago, Illinois; Panhandle Eastern Pipeline Company (Panhandle), Kansas City, Missouri; Zenith Gas System, Inc. (Zenith), Alva, Oklahoma, and Northern Natural Gas Company (Northern Natural), Omaha, Nebraska, to appear before the commission on March 16, 1964, and show cause (a) why they should not be required to obtain a certificate of convenience and necessity from the commission; (b) why they should not be required to file with the commission, rate tariffs on charges made for intrastate sales of natural gas to their mainline industrial customers in Kansas, and (c) why their intrastate operations in Kansas should not be subject to the jurisdiction of the commission pursuant to the provisions of 66-104, General Statutes of Kansas, 1961 Supplement (now K. S. A. 66-104.)

On March 16, 1964, all of the natural gas pipeline companies, except Zenith, appeared before the commission as ordered. Zenith informed the commission by letter that it would abide by its ultimate ruling. Prior to that date, petitions to intervene in the docket hearing were filed by Gas Service Company (Gas Service), Kansas City, Missouri; The Department of Defense and other executive agencies of the United States by the Judge Advocate General, and Arkansas-Louisiana Gas Company (Ark-La), Shreveport, Louisiana, which were granted by the commission.

At the commencement of the hearing, Cities Service filed a special appearance and a motion to dismiss the show cause order upon the grounds that K. S. A. 66-104, as interpreted and applied in *State, ex rel., v. Sinclair Pipe Line Co.*, 180 Kan. 425, 304 P. 2d 930, did not authorize the commission to assume jurisdiction of Cities Service either as a public utility or common carrier. The special appearance and motion to dismiss were taken under advisement by the commission and following a pretrial conference, the hearing was continued until December 21, 1964.

Testimony and documentary evidence was presented to the commission on December 21, and 22, 1964, and January 5, 1965, by Cities Service, Colorado Interstate, Northern-Natural, Natural Gas, and Panhandle and the record was closed. Motions were made by Michigan-Wisconsin and Kansas-Colorado requesting the commission dismiss them from further appearance in the proceeding, which were overruled. The commission took the matter under advisement, and on April 28, 1965, it adopted the following minute which reads:

"WHEREUPON, IT WAS MOVED, SECONDED AND CARRIED: That an Order be issued declaring the direct sales that are exempt under the Natural Gas Act made by interstate gas pipelines in the State of Kansas are a public utility function and as such are subject to the jurisdiction of the Kansas Corporation Commission."

The commission's order of April 28, 1965, herein involved, was based thereon and, omitting the caption and the signature of the members of the commission, reads:

"STATEMENT OF CASE

"This matter is before the Commission on a Show-Cause Order issued by the Commission, dated January 21, 1964, directing all interstate gas pipeline companies operating within the State of Kansas to show cause why said pipeline companies should not be required to obtain a Certificate of Public Convenience and Necessity from the Commission; to show cause why they should not be required to file with the Commission rate tariffs on charges made for intrastate sales to their mainline industrial customers in Kansas; and to show cause why their intrastate operations in Kansas should not be subject to the jurisdiction of such Commission pursuant to the provisions of Section 66-104, Kansas Statutes Annotated.

"After pre-hearing conferences, the respondent pipeline companies appeared, presented evidence and were examined at hearings in the Commission's hearing room in Topeka, Kansas, on December 21 and 22, 1964, and on January 5, 1965, after which the record in this docket was closed."

"ISSUES BEFORE THE COMMISSION

"The issues before the Commission are whether or not the direct sales of interstate pipelines to industrial customers within the state of Kansas is a public utility function within the statutory definition of a public utility under Section 66-104, K. S. A. and does the Commission have authority and jurisdiction under Section 66-101, K. S. A. to supervise and control such public utility functions."

"FINDINGS OF FACT AND CONCLUSIONS OF LAW

"From oral testimony and written exhibits, all a part of the record in this matter, the Commission finds:

"1. Section 66-101 of Kansas Statutes Annotated (K. S. A.) gives the State Corporation Commission of Kansas full power, authority and jurisdiction to supervise and control public utilities (defined by K. S. A. 66-104) doing busi-

ness in the state, and the Commission is empowered to do all things necessary and convenient for the exercising of such power, authority and jurisdiction.

"2. Section 66-104, K. S. A., provides *inter alia*, 'The term "public utility," as used in this act shall be construed to mean every corporation, company, . . . that now or hereafter may own, control, operate or manage, except for private use any equipment, plant, generating machinery, or any part thereof for . . . the conveyance of oil and gas through pipelines in or through any part of the State, . . .'

"3. Certain interstate pipeline companies operating in and through the State of Kansas make direct line sales from their pipelines to industrial and/or commercial customers within the State of Kansas; that said direct sales are made subject to contracts made directly between the said pipeline companies and the industrial and/or commercial customers; that said sales are not subject to the jurisdiction of the Federal Power Commission at this time.

"4. The direct sale of natural gas made by an interstate pipeline company from its facilities located in Kansas to Kansas consumers is affected with a public concern, welfare and interest.

"5. The direct sale of natural gas made by an interstate pipeline company from its facilities located in Kansas to a Kansas consumer is a public utility function as defined by K. S. A. 66-104, insofar as its facilities, services and operations are used in connection with such direct sale.

"6. The direct sale of natural gas made by an interstate pipeline company from its facilities located in Kansas to a Kansas consumer is subject to the jurisdiction of and regulation by the State Corporation Commission of Kansas insofar as its facilities, services and operations are used in connection with such direct sale.

"7. The regulation of direct sales of natural gas by an interstate pipeline company from its facilities located in Kansas to Kansas consumers is local in nature, and the State (of Kansas) may take jurisdiction and regulate, and the same is not in violation of the Commerce Clause, Article I, Section 8, of the Constitution of the United States. The Natural Gas Act of 1938 exempted direct sales for consumption use from Federal Power Commission regulation."

"ORDER

"IT IS, THEREFORE, BY THE COMMISSION ORDERED:

"1. That any natural gas pipeline company which makes or contemplates making any direct sale of natural gas from any of its facilities located in Kansas to a Kansas consumer is required to have a Certificate of Public Convenience and Necessity from the Commission, and any company now making such direct sales and not now having such a Certificate is hereby directed to make application for such a Certificate covering such territory as necessary to include its direct line consumers or in the alternative to cease furnishing gas to said consumers.

"2. Any natural gas pipeline companies required to have a Certificate of Public Convenience and Necessity by the preceding paragraph one (1) are hereby ordered to file rate tariffs for charges made for such intrastate direct sales, or copies of the contracts under which said sales are made, with the Commission for Commission approval, within thirty (30) days from the official mailing date of this Order by the Commission.

"3. The Commission hereby retains continuing jurisdiction of the subject matter hereof, and of the parties hereto, for the purpose of issuing from time to time such orders, amendments, additional orders, rules and regulations as may be necessary and proper in the premises.

"Dated this 28th day of April, 1965.

"BY THE COMMISSION IT IS SO ORDERED."

Pursuant to K. S. A. 66-118b, Natural Gas, Cities Service and Northern Natural filed applications for rehearing, and the latter two companies sought orders staying the operation of the commission's order. Certain other companies filed various motions, applications and petitions seeking rulings and stays of the commission's order. It would unduly extend this opinion to summarize or quote the various points raised by the applicants for rehearing, but it may be said the applications set forth specifically the errors of fact and law upon which it was alleged the commission's order was unlawful or unreasonable.

On June 24, 1965, the applications for rehearing were heard by the commission and denied. Within due time and on July 1, 1965, Cities Service, proceeding under the statute (K. S. A. 66-118c), filed its application for judicial review in the district court of Sedgwick County, and sought an order staying the commission's order here involved. On July 12, 1965, the district court entered an order staying the operation and effect of the commission's order.

Natural Gas likewise filed an application for judicial review in the district court of Barton County, and Northern Natural filed a similar application in the district court of Ellsworth County. On July 15, and 16, 1965, those district courts, on their own motions, found that the venue of such proceedings was in their respective districts, and further found that, under the authority of K. S. A. 66-118e, the convenience of the parties would be best served by transferring the proceedings in each of their respective courts, to the district court of Sedgwick County for trial, and orders were duly entered. On those dates, those respective district courts entered orders transferring the judicial review proceedings to the district court of Sedgwick County for further proceedings in accordance with law.

Thereafter, and on July 19, 1965, the district court of Sedgwick County sustained the motions of Northern Natural and Natural Gas to intervene in the judicial review proceedings then pending in that court on behalf of Cities Service, and further ordered that the court's stay order entered July 12, 1965, be made applicable to

Northern Natural and Natural Gas upon their filing corporate bonds in the amount of $5,000 each.

On May 17, 1966, the cause was heard by the district court upon the transcript of the hearing before the commission. Briefs of the parties had theretofore been filed. After the argument, Cities Service filed its requested findings of fact and conclusions of law which were adopted by Northern Natural and Natural Gas. The court took the matter under advisement and fixed time for the commission to submit requested findings of fact and conclusions of law, which were thereafter filed.

On June 15, 1966, the court made findings of fact and conclusions of law which were incorporated in and made a part of the journal entry. A copy of the journal entry, omitting the caption, the signature of the district court and the attorney's signatures of approval, is attached as Appendix A.

The court found that the order of the commission of April 28, 1965, "is invalid and void and should be set aside." Judgment was entered accordingly. The commission filed a motion for a new trial which was considered by the court and overruled.

We turn now to the legal questions presented. The briefs of the parties are replete with contentions and issues. As we view it, the dominant issue is the validity of the commission's order of April 28, 1965, and the commission's failure to comply with its own rule and regulation No. 82-1-232 relating to all proceedings before the commission and filed with the Revisor of Statutes pursuant to K. S. A. 1965 Supp., 77-415, *et seq.* Rule No. 82-1-232 provides that formal decisions of the commission shall be stated in written documents entitled "orders," and subsection (*a*) reads:

*"Form and content of orders.* Each order of the commission shall contain the caption and docket number of the proceeding in which the order is issued. The body of the order shall recite the appearances of attorneys of record for the parties, the date and place of the hearing or hearings, a summary of the allegations and contentions of the applicant (or the complainant or the petitioner), a summary of the evidence introduced by the applicant (or the complainant or the petitioner), a summary of all other evidence, a section entitled 'findings of facts' listing all facts found by the commission to be true, a section entitled 'conclusions of law' containing legal conclusions of the commission, and the directive or mandate of the commission, stated in concise and mandatory language. The order shall bear the signature of the secretary and the seal of the commission. The surnames of the commissioners who participated in the making of the order shall be typed at the end of the order. The date of mailing to the parties of the order shall be shown below the secretary's signature."

In *State, ex rel., v. Columbia Pictures Corporation,* 197 Kan. 448,

417 P. 2d 255, it was held that rules and regulations adopted by an administrative agency to carry out a policy declared by the Legislature, have the force and effect of law. (Syl. ¶ 3.) Likewise, in *Kansas Public Service Co. v. State Corporation Commission,* 199 Kan. 736, 433 P. 2d 572, it was held that rules adopted by the commission to assist it in defining the public interest and to serve the citizens of the state by prescribing an orderly practice and procedure relating to all proceedings before the commission, carry out the policy declared by the Legislature, and have the force and effect of law. (Syl. ¶ 1.) It was also held the commission is required to conform to its own rules and regulations and failure to do so renders the order unlawful.

On its face, the order of the commission of April 28, 1965, is in violation of Rule No. 82-1-232 (*a*). The order fails to contain a summary of the evidence introduced by the companies involved, and clearly does not contain basic findings of fact on which the commission relied to govern its determination and which persuaded it to arrive at its decision that the companies were subject to its jurisdiction. An undigested transcript is not a substitute for basic findings of fact.

While the order contains a section entitled "FINDINGS OF FACT AND CONCLUSIONS OF LAW," the section does not contain basic findings of fact with respect to the facilities or operations of each company in the state, but instead refers only to "certain interstate pipeline companies" which make "direct line sales" from their pipelines to industrial and/or commercial consumers within the state "subject to contract" directly between the pipeline companies and the consumers, which "sales are not subject to the jurisdiction of the Federal Power Commission." At best, the order contains only findings of ultimate fact most of which are expressed in the language of the statute (K. S. A. 66-101 and 66-104), and that is not enough, in the absence of basic findings to support it. An ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact. It is to be distinguished from the basic findings of primary, evidentiary or circumstantial facts. It is subject to judicial review and, on such review, the court may substitute its judgment for that of the commission. (*Helvering v. Tex-Penn. Co.,* 300 U. S. 481, 491, 81 L. Ed. 755, 57 S. Ct. 569.)

The question here involved is controlled by *Kansas Public Service Co. v. State Corporation Commission,* supra, which was decided less

than six months ago, where the issue was exhaustively discussed. In the opinion it was said:

". . . This court must first know what the basic findings are before it can give them conclusive weight. We have repeatedly emphasized the need for clarity and completeness in basic or essential findings on which the administrative orders rest, and findings based on substantial evidence must embrace the basic findings which are needed to sustain the order. (*Central Kansas Power Co. v. State Corporation Commission,* 181 Kan. 817, 316 P. 2d 277; *Atchison, T. & S. F. Rly. Co. v. State Corporation Comm.,* 182 Kan. 603, 322 P. 2d 715; *Class I Rail Carriers v. State Corporation Commission,* 191 Kan. 201, 380 P. 2d 396; *Darnell Truck Service v. State Corporation Commission,* 194 Kan. 96, 397 P. 2d 385; *Southwestern Bell Tel. Co. v. State Corporation Commission,* 192 Kan. 39, 386 P. 2d 515.) In the latter case it was said:

" 'The findings of the Commission must be based upon facts. It must be possible for the reviewing court to measure the findings against the evidence from which they were educed. Findings not based on evidence, but on suspicion and conjecture, are arbitrary and baseless.' (l. c. 47.) Moreover, it is equally well settled that the lack of express findings of fact by an administrative agency may not be supplied by implication (*Atchison Ry. v. United States,* 295 U. S. 193, 79 L. Ed. 1382, 55 S. Ct. 748; *Burlington Truck Lines v. U. S.,* 371 U. S. 156, 9 L. Ed. 2d 207, 83 S. Ct. 239), and *where express findings are required as a matter of procedural law in order to support an administrative determination, it may be stated as a general rule that courts will not search the record in order to ascertain whether there is evidence from which the ultimate finding could be made. (Wichita R. R. v. Public Util. Comm.,* 260 U. S. 48, 67 L. Ed. 124, 43 S. Ct. 51; *Atchison Ry. v. United States,* supra.) *Under our Public Utility Act* (K. S. A. Ch. 66) *it is the function of the Commission, and not of the court, to find the facts.*

"The reasons for requiring the findings of basic facts by an administrative agency are so powerful that the requirement has been imposed with undeviating uniformity by this court. The rationale of the rule as gleaned from the foregoing cases and others, is to facilitate judicial review, avoid judicial usurpation of administrative functions, assure more careful administrative consideration to protect against careless and arbitrary action, assist the parties in planning their cases for rehearing and judicial review, and keep such agencies within their jurisdiction as prescribed by the Legislature . . ." (l. c. 743, 744.) (Emphasis supplied.)

The purport of the order under consideration was stated by counsel for the commission before the reviewing district court, to be as follows:

"Now the order as written is *general* in nature, merely setting forth the *policy* of the Commission that where there is a direct sale of natural gas to a consumer in Kansas, the Commission is going to regulate, is going to assume jurisdiction and regulate the rates of that gas. The order doesn't go any further than that." (Emphasis supplied.)

No method of insuring against arbitrary action has yet been found, but the nearest approach to it is to require that findings of fact be

made. When a conclusion must be buttressed by findings of fact for which there is supporting evidence, it becomes much more difficult to conceal arbitrary action. We again maximize the importance of the need for the commission to adhere to Rule No. 82-1-232 (a) since it is not possible to issue a valid order without doing so. Without further discussion, it is sufficient to say the order in question was not only vague, uncertain and ambiguous as maintained by the appellees, but it failed to comply with Rule No. 82-1-232 (a) of the commission's own regulations. Likewise, it failed to comply with basic principles of administrative law repeatedly stated by this court. Official boards such as the commission are required by reviewing courts to express their orders and decisions in formal and explicit findings to the end that review may be intelligent. It has been held that our Public Utility Act imposes a specific requirement that the basic facts conditioning action by the commission be stated in findings and stated there expressly. Where legislative power is delegated subject to a condition, it is a requirement of constitutional government that the conditions be fulfilled. ( *State, ex rel., v. Fadely,* 180 Kan. 652, 663, 308 P. 2d 537, and cases cited; *Colorado Interstate Gas Co. v. State Corporation Comm.,* 192 Kan. 30, 37, 386 P. 2d 288; *Wichita R. R. v. Pub. Util. Comm.,* 260 U. S. 48, 67 L. Ed. 124, 130, 43 S. Ct. 51, construing sections of the Kansas Public Utility Act here under consideration.) In default of such fulfillment, there is no official action—only the vain show of it. We hold the commission's order of April 28, 1965, is unlawful and must be set aside for reasons heretofore stated.

While we agree with the district court's conclusion that the commission's order of April 28, 1965, was unlawful, we must nevertheless reverse its decision. What counsel for the parties and the district court apparently overlooked was the lack of basic findings of fact in the commission's order. Despite the fact there were no basic findings, the district court searched the record and made its own findings of fact and law. It substituted its findings—not for those which the commission made, but for findings the commission failed to make. In this it erred. It was powerless to do so, and it usurped the powers and functions of the commission. ( *City of McPherson v. State Corporation Commission,* 174 Kan. 407, 413, 257 P. 2d 123.) Under our Public Utility Act it is the function of the commission, and not of the courts, to find the facts. ( *Kansas Public Service Co. v. State Corporation Commission,* supra.)

In the constitutional division of powers, the regulation of public

utilities is legislative in nature. (*Quality Oil Co. v. du Pont & Co.,* 182 Kan. 488, 495, 322 P. 2d 731.) To carry out that function, the Legislature enacted the Public Utility Act. (K. S. A. 66-101 *et seq.*) The Act was comprehensive in scope. It created the commission and granted it full and exclusive authority and jurisdiction to supervise, control and regulate all public utilities and common carriers doing business in this state. When acting in the exercise of its delegated powers, the commission is not a quasi-judicial body. The Act made full provision for procedure before the commission, and provided an orderly system of judicial review by the district courts and by this court on appeal. It imposed the duty upon the commission, either upon complaint or upon its own motion, to proceed to investigate, among other things, services, charges and exactions, and practices or acts complained of (K. S. A. 66-110 and 66-111), and provided the manner of notice, investigation and hearing of the public utility or common carrier affected. (K. S. A. 66-112.) After such hearing and investigation, it provided for "orders and decisions" to be reduced to writing, and for service of copies upon the public utility affected thereby. (K. S. A., 1967 Supp., 66-113.) It provided for a rehearing by the commission with respect to any matter therein determined (K. S. A. 66-118b), and if denied, for judicial review by the district court of the county in which the order is to become effective. (K. S. A. 66-118c.)

The proceeding on judicial review is not a trial, as that term is used in the code of civil procedure. The proceeding is tried before the commission in its entirety where the commission hears the witnesses and takes all the evidence. (K. S. A. 66-118d.) The review by the district court is solely upon the record made before the commission "for the purpose of having the lawfulness or reasonableness of the original order or decision or the order or decision on rehearing inquired into and determined," and "the district court hearing said cause shall have the power to vacate or set aside such order or decision on the ground that such order or decision is unlawful or unreasonable." But *"[n]o court of this state shall have power to set aside, modify or vacate any order or decision of the commission, except as herein provided."* (Emphasis supplied.) (K. S. A. 66-118d and 66-118f; *City of McPherson v. State Corporation Commission,* supra., p. 413; *Atchison, T. & S. F. Rly. Co. v. State Corp. Comm.,* 182 Kan. 603, 322 P. 2d 715; *Southwestern Bell Tel. Co. v. State Corporation Commission,* 192 Kan. 39, 386 P. 2d 515.)

As indicated, the end result of judicial review is to determine whether the commission's order is lawful or reasonable. In making such review, the district court is required to search the record to ascertain whether there is substantial evidence to support the basic findings of fact of the commission, and it is not authorized to substitute its judgment for findings of the commission if the matter is within the realm of fair debate. (*Southwestern Bell Tel. Co. v. State Corporation Commission*, supra.) The commission performs a function in a specialized field because of the need for the expertise which it can supply (Granger, Judicial Review of Administrative Decisions in Kansas; A Legislative Enigma, 33 J. B. K., 291), and it is more than "a flag station en route to the jurisdiction possessing the real authority." (Gray, Administrative Agencies in Kansas; Statutory Procedures and Court Review, December, 1954 J. C. B., pp. 49, 64.) In *Southern Kansas Stage Lines Co. v. Public Service Corp.*, 135 Kan. 657, 11 P. 2d 985, it was said:

". . . Where its findings of fact are based upon substantial evidence and the other matters shown by the record with which that tribunal is authorized to deal, a court is not justified in setting its orders aside because the record shows that a different order or decision than the one made by the commission could fairly have been based thereon. Indeed, there are narrow limits to the authority which the legislature could confer on the court to deal with the sort of powers which may properly be vested in an official board like the commission." (l. c. 662.)

In *Rock Island Motor Transit Co. v. State Corporation Comm.*, 169 Kan. 487, 219 P. 2d 405, it was said:

". . . the Commission . . . is clothed with a wide discretion and its orders, when based on substantial, competent evidence, are final unless vacated or set aside as unlawful or unreasonable by a reviewing district court in accordance with the statute. Furthermore, a district court is not authorized to vacate or set aside such an order based on substantial, competent evidence and to substitute its judgment for that of the Commission merely on the ground that it would have arrived at a different conclusion from the evidence adduced had it been sitting as the trier of the facts rather than the Commission. A district court is authorized to vacate or set aside the order only when, from a review of the entire record, it finds it to be unlawful or unreasonable." (l. c. 498, 499.)

In the instant case, there were no basic findings of fact and there was nothing upon which the district court could review the evidence. In the absence of such findings, the district court was not called upon to examine the evidence in order to resolve opposing contentions as to what it showed or to spell out in its own findings of fact and state its conclusions of law as the record might permit.

The commission is the fact finding body, and the court examines the record not to make findings for the commission but to ascertain whether its findings are supported by substantial evidence. It need hardly be said the district court can neither affirm nor disaffirm findings which were never made. As we have seen, our statute and our decisions and the commission's rule demand that findings be made, and the courts and the parties are entitled to know how the commission disposes of the fact issues. Until that function has been performed, the courts cannot discharge theirs. We conclude the district court was not authorized under 66-118d to make findings of fact where no findings had been made by the commission, and in the absence of such findings, neither the district court nor this court on appeal can review them. Courts cannot perform the function assigned to them in the absence of adequate basic findings. (*Pacific Telephone & Telegraph Co. v. Flagg,* 189 Or. 370, 220 P. 2d 522; *Valley & Siletz R. R. Co. v. Flagg,* 195 Or. 683, 247 P. 2d 639.) In the latter case it was said:

"*Pacific Telephone & Telegraph Co. v. Flagg,* supra, holds, not only that an order by the commissioner, unsupported by evidence, is invalid, but also that a court cannot write findings for the commissioner." (1. c. 717.)

In *Colorado-Wyoming Co. v. Comm'n,* 324 U. S. 626, 89 L. Ed. 1235, 65 S. Ct. 850, an order of the Federal Power Commission reducing rates of a wholesaler of natural gas in interstate commerce did not disclose the commission's findings, and it was said:

"The review which Congress has provided for these rate orders is limited. Sec. 19 (*b*) says that the 'finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive.' But we must first know what the 'finding' is before we can give it that conclusive weight. We have repeatedly emphasized the need for clarity and completeness in the basic or essential findings on which administrative orders rest. (Citations.) Their absence can only clog the administrative function and add to the delays in rate-making. We cannot dispense with them for Congress has provided the standards for judicial review under this Act. § 19 (*b*). The courts cannot perform the function which Congress assigned to them in absence of adequate findings. *Nor are they authorized under § 19 (b) to make findings and substitute them for those of the Commission.*" (p. 634.) (Emphasis supplied.)

See, also, *Panhandle Co. v. Power Comm'n,* 324 U. S. 635, 89 L. Ed. 1241, 65 S. Ct. 821.

If the district court relied upon K. S. A. 66-118k to sustain its action in making the findings of fact and conclusions of law it made, we think it misconceived the intent and purpose of the statute which reads, in part:

"If the court shall find that the order or decision of the state corporation commission is unlawful or unreasonable in whole or in part and shall vacate or set aside the order or decision in whole or in part, the court shall make findings of fact and conclusions of law, and upon final judgment the clerk of the district court shall transmit to the state corporation commission three certified copies of the judgment of the court and the findings of fact and conclusions of law . . ."

The statute must be considered within the context of established administrative procedure incorporated in our system of judicial review by the Public Utility Act. By enacting the statute, the Legislature did not intend to transgress basic principles of administrative law, but rather, intended to supplement them.

As noted, in the instant case there were no basic findings and there was nothing upon which the district court could review the evidence, and the order was void on its face. As stated in *Kansas Public Service Co. v. State Corporation Commission,* supra, courts will not search the record to ascertain whether there is evidence from which an ultimate finding can be made. Under the circumstances, the district court should have found the order contained no basic findings and concluded as a matter of law it was void on its face, and transmitted its judgment to the commission.

The foregoing would seem to decide the issues presented. However, before concluding, we note the appellees' contention that K. S. A. 66-104, as interpreted and applied in *State, ex rel., v. Sinclair Pipe Line Co.,* supra, does not authorize the commission to assume jurisdiction of them as public utilities.

It would unduly extend this opinion to quote the provisions of 66-104 at length. Insofar as the facilities and operations of the appellees are concerned, the statute may be read as follows:

"The term 'public utility' . . . shall be construed to mean every corporation . . . that now or hereafter may own, control, operate or manage . . . any equipment . . . for . . . the conveyance of . . . gas through pipe lines in or through any part of the state . . . for the . . . transmission, delivery or furnishing of heat, light . . . or power . . ."

It is not possible to determine whether the appellees are subject to the commission's jurisdiction for the purpose asserted, in the absence of basic or essential findings dealing with the subject. As indicated, the commission has full and broad power to supervise and regulate public utilities doing business within the state. Its powers are to be liberally construed and all incidental powers are expressly granted and conferred. (66-141.) The commission is the

fact finding body. If the facts as to intrastate sales are such as to justify an order to end unjust discrimination as against bona fide regulated public utilities, either as between persons or localities, or because of undue preferential contract price or charge between the appellees and those whom they chose to serve, the commission is still at liberty, acting in accordance with the authority conferred by the statute, to make such determination upon a reconsideration of the record, or upon further hearing to obtain additional evidence, with respect to the nature and character of all direct sales of natural gas to industrial or commercial consumers along the course of their pipelines.

The appellees' reliance upon *State, ex rel., v. Sinclair Pipe Line Co.*, supra, is not well founded. For more than half a century this court has held that the production, transportation, distribution and sale of natural gas for light, fuel and power is a business of a public nature and subject to the regulations and control of the state. We do no more than refer to *La Harpe v. Gas Co.*, 69 Kan. 97, 76 Pac. 448, decided in 1904, which held:

"The production and distribution of natural gas for light, fuel and power is a business of a public nature, the control of which belongs to the state." (Syl. ¶ 1.)

In the opinion it was said:

". . . The production and distribution of natural gas for light, fuel and power affect the people generally to such an extent that the business may be regarded as one of a public nature, and is almost, if not quite, a public necessity, the control of which belongs to the state . . ." (l. c. 100.)

And in *State v. Natural-gas Co.*, 71 Kan. 508, 80 Pac. 962, the court embraced the decision of *La Harpe*, supra, and said:

". . . companies organized for the purpose of piping and distributing gas for light, fuel and power are given authority to exercise the right of eminent domain. The privilege thus conferred stamps them as *quasi*-public corporations . . ." (l. c. 509.)

In *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission*, 169 Kan. 722, 222 P. 2d 704, rehearing denied 170 Kan. 341, 225 P. 2d 1054, speaking through Mr. Chief Justice Harvey, this court again recognized the doctrine of *La Harpe*, and after quoting from the decision, stated:

"That doctrine has inhered in our subsequent statutes and decisions." (l. c. 731.)

Likewise, in *Cities Service Gas Co. v. State Corporation Commission*, 180 Kan. 454, 304 P. 2d 528, reversed by the Supreme

Court of the United States on another point, *Cities Service v. State Comm'n*, 355 U. S. 391, 2 L. Ed. 2d 355, 78 S. Ct. 381, rehearing denied 355 U. S. 967, 2 L. Ed. 2d 542, 78 S. Ct. 531, this court rejected a similar contention advanced here, and in doing so, reaffirmed the doctrine of *La Harpe* and *Kansas-Nebraska*, and said:

". . . the production and distribution of natural gas for light, fuel and power is a business of a public nature, the control of which belongs to the state . . ." (l. c. 460.)

We need not pursue the subject further, and again reiterate the historical doctrine prevailing in the decisions of this court and in our statute that the production, transportation, distribution and sale of natural gas for light, fuel and power is a business of a public nature, the control of which belongs to the state, and, by the enactment of the Public Utility Act, the regulation and supervision thereof was fully and completely vested in the commission.

In *Sinclair* it was said, in effect, that the power of the commission to regulate the activities of pipeline companies was effective where it was necessary to protect local interests in intrastate commerce. (p. 439.) Any other construction of the case would be inconsistent with our statute defining a public utility and the decisions of this court for more than half a century.

The foregoing conclusions require that this case be reversed and remanded to the district court with instructions to set aside its findings of fact and conclusions of law contained in its judgment of June 15, 1966, except its conclusion of law that the order of the commission issued April 28, 1965, was invalid and void and should be set aside, and it is directed to remand the case to the commission for further proceedings consistent with this opinion.

SCHROEDER, J., dissenting: In my opinion the findings made by the State Corporation Commission of Kansas were sufficiently specific to comply with its own Rule and Regulation No. 82-1-232 relating to all proceedings before the commission and filed with the Revisor of Statutes pursuant to K. S. A. 1965 Supp. 77-415, *et seq.*

The question before the commission was whether direct line sales by interstate gas pipeline companies operating in and through the state of Kansas from their pipelines to industrial and/or commercial customers within the state of Kansas, where the sale of such gas was not intended for resale, are subject to supervision and control by the Kansas commission.

The commission found from the evidence and admissions that

such sales were being made in the state of Kansas by the appellees and, therefore, issued its order as set forth in the court's opinion. Obviously, more specific findings are unnecessary to determine a question of jurisdiction.

The jurisdiction of the State Corporation Commission under K. S. A. 66-101, *et seq.*, does not, however, extend to interstate utilities. Therefore, the commission erred in concluding that it had jurisdiction to regulate the sales in question.

The statute under which the commission herein asserts jurisdiction was construed in *State, ex rel., v. Sinclair Pipe Line Co.*, 180 Kan. 425, 304 P. 2d 930, where the court said:

"Clearly the legislature intended regulation by the commission to apply only to such activities as pipe lines, when they were operated for public use in intrastate commerce. . . ." (p. 439.)

In the *Sinclair* case the court was not commenting on whether or not the state had the right and power to regulate interstate pipelines under the Federal Constitution. It was interpreting the intent of the Kansas legislature expressed in the public utility statutes. The court in holding that Sinclair's operations were not under the provisions of the Kansas public utility statutes said Sinclair had not held itself out to serve the public generally, and Sinclair's operations were wholly in interstate commerce.

Regulation of the interstate operations and facilities of interstate natural gas companies is precluded under the provisions of the Natural Gas Act and the Commerce and Supremacy Clauses of the Constitution of the United States.

By the passage of the Natural Gas Act (15 U. S. C. A. § 717, *et seq.*) the authority to regulate interstate natural gas companies and their operations, sales for resale, and facilities became vested in the Federal Power Commission.

In its occupancy of the field of regulation of interstate natural gas companies, the Federal Power Commission has taken unto itself the regulation of all of the facilities of such companies, whether devoted exclusively to their mainline transmission facilities, to their wholesale sales for resale, or to their direct sales for consumption. The Natural Gas Act did not leave to the states the power to regulate the facilities of such interstate natural gas companies devoted exclusively to direct sales for consumption. (See, § 1 [*b*] of the Natural Gas Act, 15 U. S. C. A. § 717 [*b*].)

The Federal Power Commission's authority to require certification and thus to regulate and control the direct sales facilities of inter-

state natural gas pipeline companies is now firmly established. In *Panhandle Eastern Pipe Line Co. v. Federal Power Com'n,* (1956), 232 F. 2d 467, cert. den. 352 U. S. 891, 1 L. Ed. 2d 86, 77 S. Ct. 129, the court said:

"What the Commission does say, and rightly we think, is that in considering the question of issuing a certificate of public convenience and necessity for the construction or operation of facilities for the transportation of natural gas to a new customer *either direct* or resale it, as part of the express certificate authority given it by Section 7 (*c*) of the Act, 15 U. S. C. A. § 717f (*c*), over the transportation of natural gas, is, among other things, fundamentally concerned with the effect the issuance of the certificate would have on the applicant pipe line's present service to its existing customers. This control over gas transportation by the Commission is completely independent of the sale of the gas and just as important. It is a separate subject of regulation irrespective of whether the particular gas is thereafter sold for resale or direct to consumers. Federal Power Commission v. East Ohio Gas Co., 1950, 338 U. S. 464, 468, 70 S. Ct. 266, 94 L. Ed. 268." (p. 471.) (Emphasis added.)

Certification of direct sales facilities by the Federal Power Commission is not automatic. In the exercise of such authority the Federal Power Commission must find that the applicant for the certificate is able and willing to do the acts and perform the service proposed and to conform to the rules and regulations of the commission, and must find that such proposed service, sale and construction is, or will be, required by the present or future public convenience and necessity. In this respect the Federal Power Commission has a wide range of discretionary authority.

Where state and federal regulation conflict, state regulation must give way to federal regulation under the Supremacy Clause of the United States Constitution. (*Free v. Bland,* [1962], 369 U. S. 663, 8 L. Ed. 2d 180, 82 S. Ct. 1089.)

The pre-emptive scope of the Natural Gas Act was recently restated in *Northern Gas Co. v. Kansas Comm'n,* (1963), 372 U. S. 84, 9 L. Ed. 2d 601, 83 S. Ct. 646, reh. den. 372 U. S. 960, 10 L. Ed. 2d 14, 83 S. Ct. 1011. There the Supreme Court of the United States said if there is possible conflict between state and federal regulation state regulation must yield. It further said its cases have consistently recognized a signficant distinction, which bears directly upon the constitutional consequences, between conservation measures aimed directly at interstate purchasers and wholesalers for resale, and those aimed at producers and production. The former, it was said, cannot be sustained when they threatened the achievement of the comprehensive scheme of federal regulation. Thus,

the action of the Kansas commission was held to be an invalid intrusion into the field pre-empted by the Natural Gas Act. In the opinion it was said:

". . . although collision between the state and federal regulation may not be an inevitable consequence, there lurks such imminent possibility of collision in orders purposely directed at interstate wholesale purchasers that the orders must be declared a nullity in order to assure the effectuation of the comprehensive federal regulation ordained by Congress." (p. 92.)

In my opinion the order issued herein by the State Corporation Commission of Kansas clearly invades an area of regulation pre-empted by the Federal Power Commission.

It is respectfully submitted the order of the lower court setting aside the order of the Kansas State Corporation Commission dated April 28, 1965, as invalid and void, should be affirmed.

## APPENDIX A

Now on this May 17, 1966, this matter comes regularly on to be heard, the respective parties appearing by their respective counsel of record, the parties respectively having theretofore filed their written briefs with the court, the court heard oral argument, after which Applicant Cities Service Gas Company filed its Requested Findings of Fact and Conclusions of Law, which were adopted by Intervenors Northern Natural Gas Company and Natural Gas Pipeline Company of America. Thereupon the court took such matter under advisement and fixed time in which Respondent was permitted to submit its Requested Findings of Fact and Conclusions of Law, which thereafter was timely filed.

Now on this June 15, 1966, the Court makes the following Findings of Fact and Conclusions of Law, to wit:

### Findings of Fact

### No. 1

On January 21, 1964, the State Corporation Commission of the State of Kansas (Commission) issued an order in Docket No. 73,100-U, entitled "In the Matter of the Issuance of a Show Cause Order Concerning Certain Pipeline Companies," ordering all interstate gas pipeline companies operating within the State of Kansas to Show Cause:

A. Why they should not be required to obtain a certificate of convenience and necessity from the Commission.

B. Why they should not be required to file with the Commission

rate tariffs or charges made for intrastate sales to their mainline industrial customers in Kansas.

C. Why their intrastate operations in Kansas should not be subject to the provisions of Section 66-104, General Statutes of Kansas, 1961 Supp.

Said Order further required the following named pipeline companies to appear at a public hearing at the Commission's hearing room at 10:00 A. M., on Monday, March 16, 1964, to present evidence and to be examined in connection with the above listed findings:

> Cities Service Gas Company
> Colorado Interstate Gas Company
> Kansas-Colorado Utilities, Inc.
> Michigan Wisconsin Pipe Line Company
> Natural Gas Pipeline Company of America
> Panhandle Eastern Pipe Line Company
> Zenith Gas System, Inc.
> Northern Natural Gas Company.

## No. 2

Pursuant to the requirements of said Order, the interstate pipeline companies summoned thereby, with one exception not here material (Zenith Gas System, Inc., informed the Commission by letter that it would abide by the Commission's ultimate ruling and made no further appearance), appeared before the Commission, and, either by affidavit or by presentation of evidence, disclosed their system-wide and Kansas operations and evidence touching on the question of the authority of the Kansas Commission to institute the regulations proposed by said Order.

## No. 3

The evidence thus presented establishing the following:

A. All of the responding companies are interstate natural gas companies subject to regulation and regulated by the Federal Power Commission under the authority of the Natural Gas Act, 15 U. S. C. 717.

B. All of the responding companies operate in Kansas pipelines which transport natural gas in and through Kansas. With two exceptions, Kansas-Colorado Utilities, Inc., and Colorado Interstate Gas Company, all of the pipelines of such companies operating in Kansas transport gas which is either produced or purchased entirely in states other than Kansas or which contains commingled quantities

of gas produced and purchased in other states. All of the pipelines of such companies operating in Kansas terminate in states other than Kansas and some or all of the gas transported through such pipelines is transported to other states for sale.

C. Sales of gas in Kansas from such interstate operated pipelines were at the time of the hearings as follows:

(1) Michigan Wisconsin Pipe Line Company makes no sales of gas in Kansas.

(2) Kansas-Colorado Utilities, Inc., makes no mainline direct industrial sales in Kansas.

(3) Colorado Interstate Gas Company made one direct sale of gas in Kansas. This sale, to an alfalfa dehydrating company in Finney County, Kansas, was held by the Commission in 1954 not subject to its jurisdiction.

(4) Northern Natural Gas Company makes several sales for resale in Kansas, and one direct sale of gas in Kansas to its wholly owned subsidiary, Northern Gas Products Company, for processing and extraction of liquid hydrocarbons.

(5) Natural Gas Pipeline Company of America makes in Kansas five sales for resale and three direct industrial sales in Kansas.

(6) Panhandle Eastern Pipe Line Company makes two direct sales in Kansas from its gathering lines and four direct sales in Kansas from its transmission lines.

(7) Cities Service Gas Company, whose main markets are in Kansas and Missouri, makes numerous sales for resale and several hundred direct industrial sales in Kansas.

(8) In addition, Cities Service Gas Company makes several hundred non-industrial direct sales of gas under right-of-way agreements, underground gas storage leases, to its employees located at its company plants and field sales for operation of oil and gas pumps. The evidence failed to disclose whether any of the other companies made such non-industrial direct sales in Kansas, except Michigan Wisconsin Pipe Line Company, whose affidavit disclosed that no sales of any kind were made in Kansas.

(9) All of the direct sales made by such interstate pipeline companies in Kansas are made under individual contracts, privately negotiated at arm's length bargaining.

(10) None of such companies has held itself out to serve the public generally or has dedicated its property to public use with respect to such sales.

## No. 4

After the record was closed and the matter taken under advisement, the Commission issued on June 8, 1965, an Order dated April 28, 1965, which Order required:

A. Any natural gas company which makes or contemplates making any direct sale of natural gas from any of its facilities located in Kansas to a Kansas consumer to have a certificate of public convenience and necessity from the Commission and any such company now making such direct sales not now having such a certificate to make application for such a certificate covering such territory as necessary to include its direct line consumers or, in the alternative, to cease furnishing gas to said consumers; and

B. Any natural gas company required to have a certificate of public convenience and necessity by the first paragraph to file rate tariffs for charges made for "such intrastate direct sales" or copies of the contracts under which such sales are made with the Commission for Commission approval within thirty days from the official mailing date of said Order.

## No. 5

The Commission's Order dated April 28, 1965, contains various sections, the first of which is a section entitled "Statement of the Case." In this section, the Commission copied the issues outlined in the January 21, 1964, Show Cause Order. The next section, entitled "Issues Before the Commission," purports to define the issues of the case. These outlined issues appear to enlarge the scope of the proceedings to include all direct sales of interstate pipelines to industrial customers whether mainline or any line. The next portion of the Order is headed "Findings of Fact and Conclusions of Law." This section contains a finding of fact that certain interstate pipeline companies made direct line sales from their pipelines to industrial and/or commercial customers and contains conclusions of law based upon this finding which appear not to limit the issues to mainline, commercial, direct line or any other type of sale. The first paragraph of the ordering section of the Order appears not to be limited to mainline sales, but appears to cover all sales. The second paragraph of the ordering section, however, appears to be limited to "such intrastate direct sales." It cannot be determined from the Order as read in its entirety whether or not it purports to cover only intrastate sales and whether it is limited to mainline industrial sales or whether it is intended to cover all sales,

although the second paragraph of the ordering section appears to be specifically confined to intrastate direct sales. Nor is any determination made as to what, if any, operations and sales the Commission believed to be in intrastate commerce. The Order contains no summary of the allegations and contentions of the parties, nor summary of the evidence.

### No. 6

Applications for rehearing and various other motions were filed with the Commission and on June 24, 1965, the Commission issued an order overruling said motions and applications.

### No. 7

A Petition for Judicial Review was timely filed with this Court by Cities Service Gas Company, and motions to intervene in these proceedings by Northern Natural Gas Company and Natural Gas Pipeline Company of America were granted. The Commission's Order was stayed pending judicial review by order of this Court dated July 12, 1965, the effectiveness of which Stay Order was extended to Northern Natural Gas Company and Natural Gas Pipeline Company of America by order dated July 26, 1965.

### No. 8

The Federal Power Commission now regulates direct mainline sales to industrial consumers of Applicant-Intervenors to the following extent: The FPC passes upon applications to make a direct sale; FPC certificates are required to install any facility to serve such an industrial consumer; interstate pipeline companies may not withdraw service from such industrial consumers without FPC consent and approval. The FPC does require its approval of contracts negotiated between industrial consumers and interstate pipeline companies, but otherwise exercises no regulation of the rates charged said industrial consumers.

### CONCLUSIONS OF LAW

### No. 1

Applications for rehearing having been timely filed with the Commission by the parties to these proceedings and overruled by the Commission and Application for Judicial Review having been timely filed with this Court pursuant to the provisions of K. S. A. 66-118c, this Court has jurisdiction of the subject matter of this action and the parties to this proceeding.

## No. 2

The Commission's Show Cause Order of January 21, 1964, limited the issues of the proceedings before the Commission to intrastate operations and intrastate sales to mainline industrial customers. The Commission's Order dated April 28, 1965, if construed as applying to interstate operations and sales and to sales other than mainline industrial sales, is an unlawful attempt to enlarge the issues without notice and hearing and without due process of law, and is, therefore, invalid and void.

## No. 3

The Commission's Order of April 28, 1965, is vague, uncertain, ambiguous, inconsistent and incomprehensible and is, therefore, invalid and void, in that it cannot be determined from the Order to what sales and operations it is intended to apply or to what activities of the respondent pipeline companies it is designed to cover. The fact that the Commission's able counsel explained in their briefs and arguments that the Commission considered *any* sale not for resale to be the subject matter of their Show Cause Order, hearing, and subsequent Order, and that the use of such words as "intrastate" and "intrastate sales" etc. in their orders were merely meant to be descriptive as to activity within Kansas, cannot be construed as a retroactive modification of said orders, and in nowise clarifies either the Show Cause Order of January 21, 1964, or the Order of April 28, 1965, as they were issued.

## No. 4

All of the operations, activities and sales of the respondent pipeline companies in the State of Kansas are in interstate commerce.

## No. 5

Neither the Federal Natural Gas Act of 1938 (15 U. S. C. A. 717), nor the Commerce Clause of the Constitution of the United States by its own force, precludes state regulation of rates of direct sales of natural gas sold by interstate pipelines to local consumers.

## No. 6

The jurisdiction of the Commission under the provisions of K. S. A. 66-101, *et seq.,* extends only to those persons performing the functions specified in K. S. A. 66-104, who have dedicated their property to public use and hold themselves out to serve the public generally.

## No. 7

The Commission's Order of April 28, 1965, is invalid and void and should be set aside.

It Is, Therefore Ordered that the Commission's April 28, 1965, Order involved herein be and the same is hereby set aside (the same being unlawful).