(631 P.2d 263)

No. 53,146

THE GAS SERVICE COMPANY, *Appellant,* v. STATE CORPORATION COMMISSION OF KANSAS, *et al., Appellees.*

Petition for review denied September 18, 1981.

Opinion filed July 15, 1981.

*Richard C. Byrd,* of Anderson, Byrd & Richeson, of Ottawa, and *Donal D. Guffey* and *Gerald T. McNeive, Jr.,* of Gas Service Company, of Kansas City, Missouri, for appellant.

*Brian J. Moline,* general counsel, of Kansas Corporation Commission, for appellees.

Before FOTH, C.J., ABBOTT and SWINEHART, JJ.

ABBOTT, J.: This appeal by The Gas Service Company (Gas Service) centers around the State Corporation Commission's (Commission) interpretation of K.A.R. 82-1-231(b) (rule 231[b]). Rule 231(b) allows a utility which proposes a change in rates within twelve months after a general rate order to submit simplified schedules with its application provided it is willing to adopt the regulatory procedures, principles and rate of return established in the last general rate case.

Within the preceding twelve months prior to commencing the

proceeding presently before us, Gas Service received a general rate order in docket No. 119,314. Two figures which the Commission arrived at in that order are of particular significance in this appeal; Gas Service was allowed 14 percent as the cost of common equity and 8.83 percent as an overall rate of return. Three months later, pursuant to rule 231(b), Gas Service filed its application with the Commission in the case now before us (docket No. 123,786), requesting $7,172,506 in additional gross revenue.

The Commission bifurcated the hearing on the application, dealing first with accounting matters concerning the requested increase in revenues and then with rate design. Rate design is not in issue in this appeal. The Commission employed special staff (the accounting firm of Fox & Company) to investigate the application and present testimony. Gas Service presented testimony that its rate of return after annualization and normalization was 6.18 percent rather than the 8.83 percent authorized. Gas Service's evidence was that the overall rate of return should increase to 9.21 percent. The staff's testimony was that the purpose of its examination of the books and records of Gas Service was to assure that the regulatory proceedings, principles and rate of return ordered in docket No. 119,314 had been applied in this case. The staff made certain adjustments, found the test year actual rate of return to be 6.33 percent, and computed the overall rate of return under the proposed increase at 9.13 percent, based on the 14 percent cost of common equity ordered in docket No. 119,314. Gas Service's witnesses stated they would not dispute any of the staff's adjustments and so adopted them. The 9.13 percent overall rate of return reduced Gas Service's request from $7,172,506 to $6,613,452. The Commission rejected a 9.13 percent rate of return and ordered a return of 8.61 percent. It is expected that 8.61 percent would produce $5,383,900, some $1,229,552 less than the staff figures adopted by Gas Service. Assuming all other embedded costs of capital used, the 8.61 percent overall rate of return would provide a 12.4 percent return on common equity. Commissioner Dick dissented to the allowance of 8.61 percent overall rate of return, stating that it was completely inadequate.

Gas Service contends that the order setting the overall rate of return at 8.61 percent is unjust, unlawful, unreasonable and confiscatory. It argues that an increase of $6,613,452 was sup-

ported by staff testimony and not disputed by any party to the proceeding. It also argues that the Commission cannot depart from the rate of return established in the previous order without having a reasonable basis for doing so and affording the utility with notice and an opportunity to be heard.

At the outset we are faced with the Commission's contention that this appeal is moot. The mootness argument is based on a subsequent application for a rate increase filed by Gas Service (docket No. 126,922) in which the Commission issued an interim order authorizing additional gross revenues of $2,718,695 for the period June 1, 1981, through September 30, 1981. Gas Service implemented the new rates on June 1, 1981, and the Commission reasons that since an increase in rates arising out of this appeal can operate only prospectively, and the interim rates are producing more than Gas Service complains of not receiving ($2,718,695 received opposed to $1,229,552 involved in this appeal), the issue is moot. We disagree.

First, the Commission issued an interim increase, which is collected under bond and subject to refund under certain conditions. Second, assuming that the increase requested in the case which is presently under consideration by the Commission is superseded by an authorized increase, the order authorizing that increase would not be final until all judicial review is exhausted. If an appellate court were to set aside that order as unreasonable or unlawful, the rates in this case would be left as the authorized ones. We recognize that our opinion in this case probably will have no effect on either Gas Service or the consumers, because the rate schedule here has been superseded by an interim order authorizing Gas Service to collect higher rates than can be provided in this case and thus in the absence of the occurrence of one of the two events described above, any change in rates ultimately authorized in this case would never be collected. We cannot say, however, that the issue is moot in view of the possibility that a determination in the present case could have real, even if short-lived, effects.

The center of controversy in this appeal is rule 231(b), which provides in pertinent part:

"Subject to prior approval by the commission, utilities which propose a change in rates within twelve (12) months after a commission order following a general rate proceeding and investigation, and which are willing to adopt all the regulatory procedures, principles and rate of return established by the commission in such

order may submit schedules which eliminate data which is a duplication of information provided in the original schedules."

Gas Service argues that rule 231(b) binds both the Commission and the utility to the rate of return established in the preceding order. The previously authorized rate of return was 8.83 percent, and Gas Service maintains it was error not to increase the overall rate of return to 9.13 percent. Obviously, 9.13 percent is more than the 8.83 percent authorized in the preceding order. Gas Service seems to argue that these percentages are merely the product of a formula, and rule 231(b) means that the Commission and the applicant must adhere to the same figures used in the preceding case, which were discretionary with the Commission. Gas Service suggests that all figures used in the formula are embedded costs and the only discretionary figure is cost of common equity. In this case, Gas Service argues that the only figure that cannot be changed is the 14 percent allowed as cost of common equity. We do not agree.

Gas Service stated during oral argument that rule 231(b) allows the Commission to adjust the 14 percent cost of common equity figure if the Commission notifies the utility of its intent to do so and a change of circumstances is demonstrated in the record. It points out that the staff and the utility both adopted the 14 percent cost of equity figure from the Commission's previous order, and there was no evidence presented by either side to dispute or question that figure.

The Commission seems to argue that rule 231(b) is procedural in nature and only the utility is bound by the rule. In its view, a result of the rule is the continuation of a prior case giving the utility an expedited hearing in return for its agreement to be bound by the rate of return previously allowed, but that the rule does not take away the Commission's discretion. The record before us indicates the Commission itself seems to take the position it was bound to set the rate of return within the range found to be reasonable in the original rate case. The Commission's staff, however, would not so limit the discretion it contends the Commission has. The staff argues that the Commission has absolute discretion to establish the rate of return, unlimited even by the "reasonable" rate of return range established in the original case. We are unable to fully agree with the arguments advanced by either Gas Service, the Commission or the staff.

As we view rule 231(b), its purpose is to allow a utility to dispense with filing data that duplicates data already furnished. In essence, it merely prescribes the form of the application to be submitted and provides a less expensive and, hopefully, an expeditious hearing in return for the utility's agreement not to raise certain issues. If the utility is unwilling to be so bound, it has the option of filing a formal application for a rate increase and proceeding in the customary manner. The question then becomes whether the Commission is also bound by the rate of return authorized in the original order. It seems to us that when the Commission adopted rule 231(b), it must have intended that it, too, would be bound by the rate of return from the original case. If the Commission does not wish to be bound by the principles and the rate of return it determined in the last general rate order, it can withhold its approval under the rule. It would be inherently unfair to preclude the utility from presenting evidence on rate of return or other principles established in the prior rate order, and then based solely on evidence of the staff or on some undisclosed consideration alter that rate or principle.

In short, we hold that when the Commission allows a utility to proceed pursuant to K.A.R. 82-1-231(b), both the Commission and utility are bound by the rate of return established by the Commission in its previous order. The Commission seems to have recognized this principle, but it obviously was of the opinion it could use any percentage within the range it had found to be a reasonable rate of return in its original order. The original order found a reasonable rate of return to be within the range from 8.61 to 8.93 percent and established 8.83 percent as the authorized rate of return. In this case, the rate of return was set at 8.61 percent. We are of the opinion that once the Commission establishes a reasonable rate of return and that order becomes final, the actual rate of return established by the Commission in its order is the figure that must be used by the parties; and the Commission may not use a different percentage even though the percentage used is within the range which the Commission found to be reasonable in the original case.

In so deciding, we recognize the existing established law concerning rules promulgated by the State Corporation Commission, and do not intend by this opinion to alter, change or distinguish existing law. It has been held that "[r]ules adopted by the State

Corporation Commission to assist it to define the public interest and to serve the citizens of the state by prescribing orderly practice and procedure relating to all proceedings before it, carry out the policy declared by the Legislature, and have the force and effect of law." *Cities Service Gas Co. v. State Corporation Commission,* 201 Kan. 223, Syl. ¶ 1, 440 P.2d 660 (1968). The Commission is required to conform to its own rules and regulations, and failure to do so renders a Commission order unlawful. 201 Kan. at page 230.

It was also held in *Columbian Fuel Corp. v. Panhandle Eastern Pipe Line Co.,* 176 Kan. 433, Syl. ¶¶ 2, 4, 271 P.2d 773 (1954):

"The rule that an administrative body's interpretation of its own rules, orders and regulations, in case of ambiguity, is entitled to great weight, under some circumstances to controlling weight, is universally recognized."

"An interpretation of an administrative order or regulation by the administrative agency will not be disturbed unless clearly erroneous or inconsistent with its order or regulation."

One other principle of law seems applicable, and that is that the Commission may not arbitrarily disregard or reject evidence. *Southwestern Bell Tel. Co. v. Kansas Corporation Commission,* 4 Kan. App. 2d 44, 55, 602 P.2d 131 (1979), *rev. denied* 227 Kan. 927 (1980).

Despite the fact that rule 231(b) was promulgated and adopted by the Commission, it is our opinion the parties in this case attempted to use the rule in a manner in which it was never intended to be used. As a result, the Commission treated the hearing as a rate increase case rather than a so-called "make whole" case. We conclude it was never intended that rule 231(b) be used in the manner the Commission has attempted to use it here. As we view the rule, it should normally be used only when there is a change in the rate base or operating expenses to the extent that the utility is unable to earn or, more correctly, has no opportunity to earn the previously authorized rate of return. The rule will not work if the rate of return on capital is in issue. Any changes in cost of capital will necessarily result in a change in the rate of return established by the Commission in the preceding case, and a different rate of return is outside the scope of and should not be considered in a rule 231(b) case.

The Commission, in our opinion, is unduly concerned about a rule 231(b) proceeding being used by a utility to guarantee the authorized rate of return. As is well known to all concerned, the

authorized rate of return is nothing more than a target, and the actual rate of return may vary considerably, either up or down. The rate of return authorized in the original case is not guaranteed, although rate design is agreed on and tariffs are filed to attain the authorized rate of return. All a second (rule 231[b]) hearing should accomplish (assuming the evidence justifies it) is a revision of the tariffs to give the utility an opportunity to earn the rate of return previously authorized. The utility has no more guarantees the second time around than it had the first. All the rule does, and all it was intended to do, is give the Commission an opportunity to correct an inequitable financial return with minimum time and expense. If the Commission does not desire to be so bound, or for any reason does not desire to so proceed, it has the absolute discretion to withhold its permission for the utility to proceed under the rule.

We reverse and remand with instructions for the Commission to grant a new hearing and proceed pursuant to rule 231(b) or grant a new hearing and proceed as in an ordinary rate case.